TALULA L. HAYSELDEN *vs.* WAHINEAEA. (w.)

EJECTMENT. EXCEPTIONS.

HEARING, MARCH 22, 1893.     DECISION, APRIL 12, 1893.

JUDD, C.J., BICKERTON AND FREAR, JJ.

A devise of land by will was uncertain as to which of two lots, Nos. 2 and 3, was devised to A. Defendant, the purchaser of lot No. 2 sold it nineteen years ago describing it in the deed as the lot purchased of A, and the adjoining lot No. 3 as the property of B. Defendant thereafter took possession of lot No. 3. In an action by the grantee of B to recover possession of lot No. 3 of defendant, there must be more evidence than defendant's denial that she executed the deed of lot No. 2 to disprove the estoppel claimed as the effect of her deed, as showing her construction of the devise. The evidence showing that the jury must have acted in giving their verdict for defendant through bias or misunderstanding, the verdict is set aside and a new trial ordered.

OPINION OF THE COURT, BY BICKERTON, J.

The case was first heard at the October Term, 1892, of the Supreme Court, and the jury disagreed and were discharged. The case came on again for hearing at the February term, 1893, of the First Circuit Court under the Act to Reorganize the Judiciary Department, and the jury rendered a verdict for the defendant. On the 23d of February plaintiff, by her attorney, filed a motion for a new trial on the ground that the verdict was contrary to the weight of evidence and to the law as laid down in the charge of the Court. On the 28th of the same month the said motion was argued before Frear, J., the judge presiding at the trial, and the Court overruled the motion. The matter now comes here on a bill of exceptions to the ruling of the Court in having denied said motion.

The history of the case is briefly as follows: About the year 1867 one Makaioulu died leaving the property mauka of

Queen street in Honolulu, marked as Lots 1, 2 and 3 on the map which was introduced in evidence. By his will he divided the property into three lots, but without stating the metes and bounds of any of them, leaving lot 1 to his widow for life, remainder to Kalo, his daughter, Lot 2 to his brother Keana for life, remainder to Kekipi, wife of Keana, and Lot 3 to his daughter Kalo. There is practically no dispute as to the location of Lot 1, which is conceded to have been the makai portion, as marked on the map. But the mauka kuleana, apparently intended to constitute Lots 2 and 3, now furnishes the dispute as to which is Lot 2 and which is Lot 3.

It was in evidence that the residence of Makaioulu was so situated as that the language of the will would, or at least might, indicate the Ewa side of the mauka kuleana as being that left to Keana, and to which both parties hereto now claim title. It is conceded that defendant succeeded by regular conveyances to the title of Keana, and plaintiff's claim is founded upon a division of the mauka kuleana in 1876, between defendant and Kalo, whereby defendant assumed ownership of the Waikiki part (marked 2 on the map), and Kalo assumed ownership of the Ewa portion (marked 3 on the map) and it is upon those deeds, then executed, that plaintiff chiefly relies.

Makaioulu died in 1867; his wife died soon after, and left Kalo, their daughter, a minor, who was placed under successive guardians, among whom was the defendant, her aunt. Defendant lived in the same house with the Makaioulu family, and after the deaths referred to, continued there with Kalo the minor until the house became unfit for occupation. That house was Lot 1 on the map, Kalo's title to which is not questioned. When that house became uninhabitable (defendant having in the meantime bought the Keana interest from Keana's widow) defendant took what material was useful in the old house, and with other and newer material built a house mauka of the old one on the lot marked 3 on the map. Defendant and Kalo (then still a

minor) went to live in the newer house, and there continued till Kalo came of age, and still later got married and went to live on Kauai.

In the meantime, in 1874, defendant and Kalo executed a mortgage as co-owners of the present Lots 2 and 3 (the entire mauka kuleana) to M. McInerny, wherein they assumed to be owners of the entire kuleana. There was some controversy as to the execution of this mortgage, but the facts were very fully proven by His Honor the Chief Justice, who drew the mortgage, and who identified defendant to J. H. Paty, who took her acknowledgment. The execution of this instrument was on the first trial flatly denied by defendant; but on the second trial she modified that denial into a failure of memory.

The McInerny mortgage was soon after transferred to Kekuanaole (apparently for Fanny Young Kekelaokalani); and when it matured, Fanny Young's agent, Kekuanaole, went to defendant and Kalo where they were living on the land in issue and demanded payment. Defendant, in her evidence, says: "He asked us to pay what we owed, and we replied that we had no money." It was then arranged that they should make conveyance of their land in order to pay off the mortgage, and the deed from defendant to Fanny Young, covering the Waikiki portion (Lot 2 on map), and the mortgage from Kalo to Fanny Young of the Ewa portion (Lot 3 on map) of the mauka kuleana, were the results of that effort to pay off the McInerny mortgage.

At the first trial of the case the plaintiff offered in evidence and filed the original deed from defendant to Fanny Young. Between that trial and the last one held, that deed has been abstracted from the Court files by some person unknown, and has not been found since; a certified copy thereof is however on file and also of the mortgage from Kalo to Fanny Young, executed the same day, and which follows the deed upon the next page of the registry. Both documents were acknowledged before Thomas Brown, Registrar of Deeds. The mortgage of Kalo to Fanny Young was

afterwards released, and another mortgage was given by her to Mrs. Borres, and under the last one mentioned, the foreclosure proceedings were had through which the plaintiff claims title.

We may fairly start from 1874, the time when defendant and Kalo executed the mortgage to McInerny of Lots 2 and 3, being the mauka portion. The record of this mortgage was notice to the world that they claimed to be the owners of these two lots. When the payment of this mortgage was demanded defendant in her evidence says, "He asked us to pay what we owed, and we replied that we had no money;" it then became necessary to raise the money, and then they certainly divided the mauka portion, Kalo giving a mortgage to Fanny Young of her portion, Lot 3, and defendant giving a deed of her portion, Lot 2, to Fanny Young; in that deed defendant recognizes the other adjoining lot as belonging to Kalo, and describes the lot she was selling as the lot conveyed to her by Kekipi; this deed was put on record, and was notice to the world that she only claimed the lot she sold, and was a declaration that of the mauka portion Kalo took Lot 3, and she took Lot 2. The defendant in her evidence speaks of her visit to the Registry Office in company with Kalo to arrange some papers in connection with her land and talking with Mr. Brown the registrar; these papers must have been the mortgage from Kalo and the deed from herself; the evidence points clearly to this fact. This certainly was notice to any purchaser of lot 3, searching the records, that defendant had no claim to it, and that it was the property of Kalo. But defendant denies that she executed this deed; her evidence is not positive; but she tells many facts which of themselves might well be held to prove her execution without the aid of direct and positive evidence from any other source. But we have the positive evidence of Mr. Lazarus, a subscribing witness to the deed, who was at the date of the execution of the deed a clerk and interpreter in W. C. Jones' office where the deed was drawn, and he (Mr. Lazarus) testifies with a minuteness of detail to the

execution of the deed, and to the fact of his having got into a quarrel with Mr. Jones, his employer, because of having told her at the time of reading and interpreting the deed to her before signature, that she was being taken in and was selling too cheaply.

To have found the verdict that the jury did, they must have found that the defendant did not execute that deed. We are of opinion that such a finding cannot be sustained in the face of the evidence adduced in the case. There is not a shadow of doubt that there was a joint mortgage from defendant and Kalo, and that it was lifted by another mortgage from Kalo of part of the land and a deed from defendant of the other part. This fact in itself under the circumstances, is in our opinion almost conclusive. Defendant says herself they had not the money to pay the mortgage; the first mortgage was released, it certainly was not released without a settlement being had of the amount due. The evidence points beyond a doubt to the fact that the settlement was made in the way above stated.

The Court charged the jury that the will of Makaioulu being uncertain as to the way the mauka portion was to be divided, then it is to be construed in the way in which the parties who are interested themselves and those under whom they claim construed it. The evidence is clear as to how defendant and Kalo construed it, defendant selling her share by metes and bounds and Kalo mortgaging hers.

The Court further charged, "I instruct you as a matter of law that after a lapse of time, after a long time, and if the parties have acted as if the deed were a deed executed by the defendant, then her mere testimony that she did not execute it is not sufficient. There should be something more. If you find that the deed was executed a long time ago, as you must, and if you further find that she assented to it and that possession has been in accordance with it, then her mere testimony as a matter of law is not sufficient to show that she did not execute it; that has been decided by our Supreme Court." *Kamalu vs. Lovell,* 5th Haw., p. 62. Further

on the Court says, "If you find that she did execute that deed she is presumed to know the contents of it; she cannot come in here and say that there was a mistake or that there was fraud." Further, "The acts of the defendant and those under whom she claims would estop her from saying anything contrary to what her acts have shown."

No exception was taken to any part of the charge; it was the law of the case as given by the Court. Defendant's counsel contends, and it is his only contention, that the fact was left to the jury and they found for the defendant, and the Court cannot interfere with the verdict. But a verdict must be in conformity to the law and the evidence; there must be evidence to support it. The charge of the Court in this case was clear and positive that the mere denial of defendant that she executed the deed was not sufficient. But we have the positive evidence that she did execute it. In the face of the instructions given by the Court, and the evidence, we fail to see how the jury could find for the defendant. In *Bishop vs. Kala,* 7th Haw. p. 591, the Court says: "If it appears clearly to the Court that the verdict is so manifestly against evidence as to induce the conviction that a mistake has been made or that injustice has been done, or when it appears that the verdict is clearly, palpably, decidedly and strongly against the evidence, or is manifestly the result of bias or of misunderstanding on the part of the jury, the verdict will be set aside."

In the case at bar we are of the opinion that the verdict is of this nature and ought to be set aside and a new trial ordered. And it is so done accordingly, and the exceptions are sustained.

*C. W. Ashford,* for plaintiff.

*J. Nawahi,* for defendant.