*H. G. Middleditch* for plaintiff.

*A. G. Correa* for defendant.

---

# TERRITORY *v.* TAKEO NISHI.

## No. 1124.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT. HON. W. H. HEEN, JUDGE.

ARGUED FEBRUARY 25, 1919.                    DECIDED MARCH 12, 1919.

COKE, C. J., EDINGS, J., AND CIRCUIT JUDGE DEBOLT IN PLACE OF KEMP, J., ABSENT.

RAPE—*resistance by woman.*

In the absence of threats or other things which make resistance impossible there must be not only an entire absence of mental consent but there must be the most vehement exercise of every physical means or faculty within the woman's power to resist.

SAME—*instructions to jury.*

Where there was no evidence that the ability of the prosecuting witness to resist was overcome by reason of unconsciousness, threats or otherwise, it is held to be error for the court to refuse to instruct the jury that in order to convict they must find that the prosecuting witness "did everything she could under the circumstances to prevent the defendant from accomplishing his purpose. If she did not do that it is not rape."

SAME—*evidence of complaint—probative effect.*

The effect of evidence that a complaint was promptly made by the prosecuting witness is to affect favorably the credibility of such witness and not to corroborate the testimony given at the trial. *Territory* v. *Schilling*, 17 Haw. 249, overruled.

OPINION OF THE COURT BY COKE, C. J.

The defendant, Takeo Nishi, was tried and convicted in the Circuit Court of the first judicial circuit of the crime of rape and has now brought the cause to this court by bill of exceptions. Six assignments of error are specified, the first four having to do with the instructions given by the trial judge to the jury, the fifth being to the verdict of the jury on the ground that it was contrary to the law and the evidence and the weight of the evidence, and the sixth being to the order overruling defendant's motion for a new trial.

We will first consider the merits of the claim of the defendant that the verdict of the jury was contrary to the law and the evidence which is one of the grounds set up in the motion for a new trial. Counsel for the prosecution makes the point that because this question was not presented to the trial judge by proper motion for a directed verdict both at the close of the defendant's case in chief and at the close of all the evidence the defendant has waived his right to now urge that the evidence is insufficient to sustain the conviction. While there may be some federal cases which prescribe this as the practice obtaining in those courts yet the rule has never prevailed in this Territory. If the verdict is so manifestly against the evidence as to induce the conviction that a mistake has been made or that injustice has been done or where it appears that the verdict is clearly, palpably, decidedly and strongly against the evidence or is manifestly the result of bias or of misunderstanding on the part of the jury the verdict should be set aside. See *Bishop* v. *Kala,* 7 Haw. 590; *Hayselden* v. *Wahineaea,* 9 Haw. 51, 56. And so long as that question was properly presented to the court below affording it an opportunity to pass thereon, which was done in this case by defendant's motion for a new trial, the defendant may then have his exception to this court from the adverse ruling of the court.

A summary of the evidence gathered from the testimony of the several witnesses shows the following undisputed facts: The prosecuting witness, Shigeko Murata, is a Japanese girl, being at the time of the alleged assault about sixteen years of age; the defendant is a Japanese boy and at that time was between eighteen and nineteen years of age; that these two young people had formerly worked together in the same factory and had become friends and companions; that on New Year's day, that is, the 1st day of January, 1918, the complaining witness in company with another Japanese girl by the name of Ochio, of about the age of the complaining witness, sought the defendant and induced him to accompany them to Moanalua park, which is located in the suburbs of the city of Honolulu; after wandering about the vicinity of the park it was finally suggested that they return by an unfrequented path to the government road which converges with the main road near Fort Shafter. There is some diversity of testimony in regard to just what happened at the time the alleged offense was committed, but accepting the version of the prosecuting witness it appears that the defendant requested the prosecuting witness to accompany him to a spot in the grass a few feet from the main road; that thereupon the defendant, together with the two girls, turned off the main road and that the defendant caught hold of the prosecuting witness, threw her to the ground and took off her drawers; that the other girl (Ochio) was present up to that time, after which she went out into the government road. The complaining witness testified that the defendant put his hand upon her mouth and upon her throat; she further testified that she called in a loud voice for five minutes while the defendant was divesting her of her drawers; she also testified that at that time the defendant in a loud voice called Ochio three or four times; that the defendant, while she

was lying on her back on the ground, had sexual intercourse with her; she further testified that she made no effort to close her legs nor to beat, kick or scratch the defendant; she attempts to excuse her failure to kick defendant to the fact that her drawers were off; she says that while the alleged assault was taking place Ochio called to them that a soldier was coming and the defendant thereupon desisted and they proceeded to the government road; that she noticed blood upon her clothing and thereupon approached the soldier and asked him to help her. There is no evidence that she made any complaint to the soldier of the alleged assault by the defendant. The defendant was there present and after some conversation with the soldier they all proceeded to the station of the street railway company and the defendant was placed under arrest. The prosecuting witness frankly admitted on cross-examination that in October, 1917, she and an elderly Japanese man were attempting sexual intercourse when they were interrupted by the approach of an automobile. Aside from the testimony of the complaining witness there is much significant testimony given by the witness Ochio which tends strongly to refute the claim of the prosecution that there was any actual resistance on the part of the prosecuting witness at the time the defendant had sexual intercourse with her. This may be summarized as follows: That while the defendant and the complaining witness were in the grass close to the road the witness was with them; that they were just playing at the time; that the prosecuting witness was on the ground and that the defendant was sitting beside her; that the witness then proceeded to the government road a few feet away; that she heard the complaining witness scream but once; that both the complaining witness and the defendant called to her to return; that the defendant called to her many times; that

when the witness saw a soldier she ran into the grass and called "Look out, there is a soldier coming." The defendant testified in his own behalf to the effect that the complaining witness had on many occasions called upon him at his place of work and had often gone to his home in search of him; that she had on many occasions urged him to go out with her but that he had refused; that on the day of the alleged offense, the same being a holiday, he had acceded to the request of the prosecuting witness to go with her to Moanalua park and that it was mutually understood that they should find a suitable place and have sexual intercourse. The defendant admits the act of sexual intercourse alleged in the indictment but denies that it was with force and against the will of the complaining witness, stating that she consented thereto and did not resist and that it was only after the discovery of blood upon her garments that she became excited and started to cry and asked aid of the soldier. It is not claimed by the prosecution that there were any marks of violence of any kind upon the defendant or upon the complaining witness except such lacerations in and about her private organs as would naturally result from the act of intercourse. The clothing of the complaining witness was introduced in evidence and although the outer as well as the inner garments are of light and frail texture yet they present no tearing nor disarray, and when one pauses to reflect upon the terrific resistance which a determined woman would make such a situation is almost if not quite incredible. "In the absence of threats, or other things which make resistance impossible, there must be not only an entire absence of mental consent or assent, but there must be the most vehement exercise of every physical means or faculty within the woman's power to resist penetration and a persistence in such resistance until the offense is consummated. The term 'rape' im-

ports not only force and violence on the part of the man, but resistance on the part of the woman. There must be force, actual or constructive, and resistance. In the absence of proof of resistance consent is presumed. Mere general statements of prosecutrix that she resisted are not sufficient, but the specific acts of resistance must be shown. The dissent and repulsion must be shown beyond a reasonable doubt." 33 Cyc. p. 1427.

A case bearing great similarity to the one at bar, although stronger upon the facts, is *Brown* v. *State*, 127 Wis. 193, where the same rule is adopted. Another leading case is *People* v. *Dohring*, 59 N. Y. 374. See also *People* v. *Mayes*, 66 Cal. 597.

Measured by these well established principles it is obvious that the evidence in this case falls far short of showing that degree of resistance which is required of the woman in order to sustain a conviction upon the charge of rape. Indeed the resistance upon the part of the prosecutrix, if in fact there was any, was of such an equivocal character as to suggest actual consent. There was no evidence whatsoever that the ability of the prosecuting witness to resist was overcome or even impaired by reason of unconsciousness, threats or exhaustion.

The trial court modified instruction No. 1, requested by the defendant, by striking from the instruction that portion which advised the jury that in order to convict they must find that the prosecuting witness "did everything she could under the circumstances to prevent the defendant from accomplishing his purpose. If she did not do that it is not rape." Counsel for the prosecution endeavors to justify the refusal by the court to give this instruction because "it is only in cases where the complaining witness is not so overcome with fear of great bodily harm from the threats or conduct of defendant that defendant must find that she resisted to the utmost," etc. We think

the refusal to give that portion of the instruction which was disallowed by the court tended to mislead the jury by suggesting that they might find such situation and excuse in the facts of the case, whereas there was no evidence whatever of any threats or other facts to justify such finding. See *Brown* v. *State, supra.*

Defendant's exception No. 2 goes to the modification by the court of defendant's instruction No. 7. We find no error in this as the subject was covered by other instructions.

Defendant's exception No. 4 challenges the correctness of the prosecution's instruction No. 3 as given by the court as follows: "If you are satisfied in this case beyond a reasonable doubt that the victim of this alleged crime, Shigeko Murata, made prompt and early complaint of the wrong and injury committed by this defendant upon her person and to her character and chastity, such evidence may be received and considered by you as corroborative of the other testimony given by her in this case." This instruction should not have been given for various reasons. First, it is objectionable because it assumes as a fact that defendant committed a wrong and injury upon the person of the prosecutrix; second, because no complaint of the alleged assault was made by the prosecuting witness, and finally and independently of the other reasons, even had a complaint been made by the prosecuting witness, the instruction is an incorrect statement of the rules governing the effect and purpose of such a complaint. Section 3903 R. L. 1915 reads as follows: "The female upon whom rape is alleged to have been committed, or who is alleged to have been abducted or seduced, is a competent witness in a prosecution for such rape, abduction or seduction; but no person shall be convicted of rape, seduction or abduction, upon the mere testimony of such female uncorroborated by other evidence

direct or circumstantial." If it was the purpose of the. court to say to the jury in this case that the early complaint by the prosecutrix of the alleged assault of itself constituted the corroboration required by the statute then the instruction was entirely erroneous, and even if such was not the purpose of the court yet the instruction was so worded as to almost certainly mislead the jury. It is not unlikely that the error into which the court fell in this regard is chargeable to the opinion of this court in *Territory* v. *Schilling,* 17 Haw. 249, where the court stamped with approval an instruction given by the trial court which advised the jury that in a prosecution for rape the complaint of the alleged assault by the complaining witness was in itself sufficient corroboration of the evidence given by her of the alleged assault to alone support a conviction. We think the rule which permits the prosecutrix to testify that she made timely complaint of the alleged assault and the purpose and effect of such testimony is incorrectly set forth in the *Schilling* case, for which, and other misinterpretations of established rules of criminal law, we are forced to the conclusion that the opinion in the *Schilling* case is an unsound precedent. The true rule is well expressed in *State* v. *Rodesky,* 90 Atl. 1099. In that case the trial judge, dealing with the law requiring corroboration, instructed the jury that "On the question of corroboration you should take into consideration whether Emily (the State's witness) made a prompt complaint." In reviewing this instruction the court of errors and appeals of New Jersey said: "He (the judge) in effect told the jury that if they found that a prompt complaint was made by the State's witness it was a corroboration of the incriminating testimony given by her upon the stand. This clearly was error without regard to the admissibility of the fact of the complaint. Even in trials for rape the fact that a complaint was

made by the woman is admitted not as corroborative of the facts to which she has testified on the trial but for the purpose of meeting in advance a self-contradiction in her conduct, which, if unexplained, would discredit her as a witness. * * * We do not base the reversal of the present judgment upon the inadmissibility of the evidence of a complaint but upon the wrongful use that was made of this evidence when the jury was instructed that if a complaint was made by the State's witness it was a corroboration of her testimony or might be so construed by the jury."

The defendant's exceptions are sustained to the end that a new trial may be had and it is so ordered.

*C. S. Davis,* Second Deputy City and County Attorney (*A. M. Brown,* City and County Attorney and *A. M. Cristy,* First Deputy City and County Attorney, with him on the brief), for the Territory.

*J. B. Lightfoot* for defendant.