## THE KING vs. AHOP alias AHOPA.

EXCEPTIONS FROM THE CIRCUIT COURT, THIRD JUDICIAL CIRCUIT.

### JANUARY TERM, 1889.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

On a trial for murder the following instruction to the jury was asked by defendant's counsel and refused by the Court; "That it is insufficient to convict, assuming all to be proved which the evidence tends to prove, if some other hypothesis may still be true. The true test is that the circumstances proven must produce the absolute conviction in your minds of the guilt of the defendant, and must exclude any other conclusion at which you may arrive on weighing the evidence."

Held, the refusal was no error; the true rule is that the circumstances must be such as to produce a moral certainty of guilt and to exclude every other *reasonable* hypothesis.

The Court refused the following instruction on behalf of the defendant; " Where, on the trial of a capital offense, the evidence is solely circumstantial, it should be so strong as to exclude every other supposition inconsistent with the guilt of the accused."

Held, the refusal was no error, for the reason given in the previous point.

The Court was asked to charge on behalf of defendant; "That the defendant is not to be presumed guilty merely from the fact of his being in company with Ah Su, who committed the offense, unless some participation of defendant is shown."

The Court refused this instruction, but charged : "If Ah Su alone killed Kapahee and yet if you find that Ahopa did aid and abet Ah Su in that murder; if Ah Su struck the blow and Ahopa was present assisting or in any way aiding or abetting him, it is your duty to find him guilty."

Held, no error : The instruction given was in conformity with Penal Code, Chapter V., Section 1.

When the instructions given are correct and cover the ground, the refusal of the Court to charge in the very terms asked by counsel is no ground of exception.

The circumstances of the murder reviewed by the Court. They afforded abundant evidence upon which the jury found their verdict of guilty.

OPINION OF THE COURT, BY JUDD, C.J.

The defendant, a Chinaman, was tried at the November Term, 1888, of the Circuit Court of the Third Judicial Circuit, for the murder of one Kapahee, a native of Hawaii, the murder being alleged to have been committed at Puna, Island of Hawaii, on the 3d of September last.

Counsel, W. A. Whiting, Esq., was assigned for his defense.

The jury rendered a unanimous verdict of guilty.

This verdict was excepted to as contrary to law and the evidence. Exceptions were taken to the refusal of the Court, Mr. Justice Bickerton, to give certain instructions to the jury. These will be considered later on.

The essential facts of this case are as follows: An elderly native Hawaiian, residing at Puna, Island of Hawaii, a man of note in that community, named Kapahee, who had acted as a policeman, and was then a school teacher, had some difficulty in regard to money matters with a Chinese storekeeper named Ah Su, which resulted in a law suit before the District Court, and which was appealed to the Circuit Court then about to be held in the adjoining District of Kau.

On the morning of the 3d of September, which was Monday, Kapahee, who was a large, vigorous man, with grey hair, walked from his house, which is close by the store of Ah Su, to Captain J. E. Eldarts' house—a distance of about two miles. It was known at the store that he had gone there; it was also generally known that he expected to receive about $60 from Captain Eldarts. He went to Captain Eldarts, received his pay, about $10, and started back homewards between 8 and 8:30 o'clock A. M., and the last that was seen of him alive was as he passed over a hill on his way homewards.

Shortly before this, a Hawaiian lad about 8 years old, named Kapeleliilii, was riding along the road to a fishing settlement, and passed Ah Su standing in the road, and, a short distance beyond, the Chinaman Ahopa (the defendant) sitting in a cleft between two large boulders at the side of the road, where he

could not be seen by a person passing in the road until he got directly opposite him. The boy knew these two men well, as he lived in the same settlement with them. Ahopa admitted, in his testimony on defense, that he was there with Ah Su when the boy passed, but says that he was hunting for a lost mule.

Kapahee was missed, and the next day search was made for him, and there was found in the road, at the spot where the boy says he saw these two men, two large stones with human hair, grey in color, clotted blood and brains on them, and the bushes on the upper side of the road for about thirty paces distant showed traces of a body having been dragged over them. With the assistance of dogs, search was made by a large party of natives, and finally on Wednesday, at a distance of about a mile and a half from the road and below it toward the sea, the dead body of Kapahee was found buried in a crack in the lava and piled over with stones. His pantaloons were gone, and his shirt was pulled over his head. His head had severe wounds on it and his skull was broken in.

A Chinaman named Akina arrived at the store of Ah Su the night of this 3d of September, and went to bed in one of the rooms. He was awakened in the night by Ahopa and Ah Su, who told him they wished his services to bury a dead native, and threatened him that they would fix the crime of murder upon him if he did not consent to assist them. He was required to get a pack donkey and saddle, and he did so, and this animal was led by Ahopa, and Ah Su went ahead with him, followed by Akina. The party finally reached the body of Kapahee lying in the rocks above the road. The body was placed on the mule, with some difficulty, and tied on, and the animal led along the road towards Hilo. When they got to a gate on the side of the road towards the sea, Akina was told he might go home to the store, and Ahopa and Ah Su continued on with the body towards the sea on a trail in the lava. Ahopa and Ah Su returned to the store about midnight and went to bed.

There was found under the house the pack-saddle, some clothes, consisting of two pairs of pants and a shirt, and a pair of shoes, all of which were more or less bloody, and soap or lard had been smeared over the clothes.

Ah Su was first arrested and taken to Kau, where he was committed for trial. After an attempt to escape and several attempts at suicide, he was placed on a steamer bound to Honolulu, and soon after starting died in considerable agony, it is presumed of poison, which he must have taken on his way to the vessel.

We have, then, the admission of this unfortunate defendant that he was at the spot where this murder was committed just before the time when it must have been committed, in company with a man named Ah Su, who had a difference with the murdered man, and who committed suicide on being bound over for trial for the murder of Kapahee. It was shown that Ah Su was a small man, and presumably unequal to the killing and dragging off over stones and bushes of so large a man as Kapahee without assistance. The defendant admits that he assisted Ah Su in carrying the body from where it lay to where it was buried in the stones, but says he was required by Ah Su to do so.

Captain Eldarts said that he took Ahopa with him to where the body of Kapahee was found, and that Ahopa was trembling and crying, but would say nothing and was much excited. His hands also were scratched as if he had been handling the sharp stones which abound in that neighborhood.

We are convinced that the jury had abundant evidence upon which to find their verdict of guilty, and refuse to disturb it on the ground alleged, that is contrary to the evidence.

Following are the instructions to the jury asked for by counsel for the prisoner and refused by the Court in the form presented:

"That it is insufficient to convict, assuming all to be proved which the evidence tends to prove, if some other hypothesis may still be true. The true test is that the circumstances proven must produce the absolute conviction in your minds of the

guilt of the defendant, and must exclude any other conclusion at which you may arrive on weighing the evidence."

The Court charged the jury that the circumstantial evidence given must be consistent with guilt and inconsistent with the innocence of the defendant in order to convict defendant of murder. And also the Court charged as follows, from notes to *Commonwealth vs. McKie*, 1 Leading Crim. Cases, pages 320 and 321:

" But if a defendant in a criminal case has a right to have the jury instructed that they must be satisfied of his guilt beyond a reasonable doubt, the question arises, what is a reasonable doubt ? It has been defined to be a doubt for which a reason could be given. It certainly must be a serious and substantial doubt, not the mere possibility of a doubt. And although a jury might believe from the evidence that it was possible some other person than the defendant might have committed the crime, it does not necessarily follow that they must acquit. Absolute mathematical or metaphysical certainty is in no case essential ; moral certainty is all that is requisite. The proof should be such as to control and decide the conduct of men in the highest and most important affairs of life, and not a mere vague conjecture, a fancy, a trivial supposition, a bare possibility of innocence. To acquit upon such doubts is a virtual violation of a juror's oath. And if the whole evidence produces such a conviction in the minds of the jury of the guilt of the prisoner as they would act upon in a matter of the highest importance to themselves in a like case, it is their duty to convict. The evidence need not exclude every possible hypothesis but the guilt of the defendant. In *Com. vs. Webster*, 5 Cush., 320, Chief Justice Shaw said : ' A reasonable doubt is not mere possible doubt, because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the

charge. It is not sufficient to establish a probability, though a strong one, arising from the doctrine of chances, that the fact is more likely to be true than the contrary; but the evidence must establish the truth of the fact to a reasonable and moral certainty, a certainty that convinces and directs the understanding, and satisfies the reason and judgment of those who are bound to act conscientiously upon it.' Or, as elsewhere expressed, a reasonable doubt exists when the evidence is not sufficient to satisfy the judgment of the truth of a proposition with such certainty that a prudent man would feel safe in acting upon it in his own important affairs. It is not necessary that such reasonable doubt should convince the jury that the fact is not as charged. A doubt never convinces."

We are of opinion that the jury were rightly instructed by the Court in this charge.

" The rule requiring proof beyond a reasonable doubt does not require proof as excludes every hypothesis except the guilt of the prisoner; the true rule is that the circumstances taken together should be of a conclusive nature and tendency, leading on the whole to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that the accused, and no one else, committed the offense charged." *Com. vs. Webster*, 5 Cush., 319.

In *Com. vs. Goodwin*, 14 Gray, 57, the Court said : " The instruction asked for was erroneous, because it required the Judge to decide that the prisoner could not be convicted upon circumstantial evidence, unless the circumstances were such as to exclude every hypothesis except that of his guilt. The true rule is, that the circumstances must be such as to produce a moral certainty of guilt, and to exclude any other reasonable hypothesis." We can see that unreasonable hypotheses could be invented by ingenious counsel or sympathetic jurors which, if the law allowed them to be rested upon as a defense, would make conviction for crime in a large number of cases impossible.

In *People vs. Murray*, 41 Cal., 67, the Court says : " The appellant's third point is not tenable. The instruction refused

36

is as follows : ' In order to justify the inference of legal guilt, the existence of the inculpatory facts must be absolutely incompatible with the innocence of the accused and incapable of explanation upon any other reasonable hypothesis than that of his guilt.' To require the facts to be absolutely incompatible with the innocence of the accused, is to require proof of his guilt beyond the possibility of a doubt. The law requires that the facts shall not only be consistent with the guilt of the accused, but inconsistent with any other rational conclusion. A higher degree of certainty in establishing the guilt of the accused by means of circumstantial evidence cannot be required, without rendering such evidence valueless." See also *People vs. Pudillia*, 42 Cal., 540, and *Commonwealth vs. Castley*, 118 Mass., 1.

The second point is not tenable. The instruction claimed to have been erroneously refused is as follows : " Where, on the trial of a capital offense, the evidence is solely circumstantial, it should be so strong as to exclude every supposition inconsistent with the guilt of the accused."

This point is fully answered by our observations and citations on the first point.

The third and last exception is to the refusal of the Court to charge : " The defendant is not to be presumed guilty merely from the fact of his being in company with Ah Su, who committed the offense, unless some participation of defendant is shown."

But we find that though the instruction was refused in this form, the Court charged the jury, " If Ah Su alone killed Kapahee and yet if you find that Ahopa did aid and abet Ah Su in that murder, if Ah Su struck the blow and Ahopa was present assisting or in any way aiding or abetting him, it is your duty to find him guilty."

. The instruction is in comformity with the statute law of this country. " All who take part in the commission of any offense, or being present, aid, incite, countenance or encourage others in the commission thereof, shall be deemed principals therein." Penal Code, Chapter V., Section 1.

It is a well established rule of law that " when the instructions given to the jury are legal and appropriate, and cover the whole ground of the instruction asked for, the omission or refusal of the Court to rule in the very terms requested by counsel affords no ground for exception." *Commonwealth vs. Castley*, 118 Mass., 25; *Kelly vs. Jackson*, 6 Pet., 622; *State vs. Reed*, 62 Me., 129.

All the circumstances shown to the jury lead to the conclusion that the prisoner was not only present but took some part in the murder.

We are obliged to overrule the exceptions.

*A. P. Peterson* (Deputy Attorney-General), for the Crown, *Chas. Creighton* with him.

*W. A. Whiting*, assigned for defendant.