# TERRITORY OF HAWAII v. OLIVER CHARMAN.

EXCEPTIONS FROM CIRCUIT COURT, FIFTH CIRCUIT.

ARGUED OCTOBER 11, 1906.          DECIDED OCTOBER 30, 1906.

FREAR, C.J., HARTWELL AND WILDER, JJ.

JURY LAW—*workable notwithstanding botchy amendments.*

The jury law is still workable although several of its provisions were not amended sufficiently to harmonize clearly with amendments made in other provisions by Act 74 of the Laws of 1905.

LEADING QUESTION—*what is and when harmless.*

The question "did you want him (the defendant) to do this or not," put to the complaining witness in a case of rape after she had testified what the defendant had done to her, is not leading, and if it were its allowance would not be reversible error.

CONFESSION, EVIDENCE—*plea of guilty before committing magistrate, magistrate's minutes.*

A plea of guilty by an accused before a committing magistrate is admissible as a confession, and may be proved by the magistrate's reading the charge as entered in his record book and testifying that he read the charge as so entered to the accused and that the latter pleaded guilty to it. If the record was not admissible as such, its admission was harmless error as it merely repeated what the magistrate had testified.

RAPE—*utmost resistance excusable by fear of great bodily harm.*

In a case of rape it is not necessary to show that the complaining witness resisted to the utmost of her physical power if she was deterred from doing so by fear of great bodily harm from the threats and conduct of the accused.

OPINION OF THE COURT BY FREAR, C.J.

The defendant having been tried, convicted and sentenced on a charge of rape brings the case here on exceptions.

Exception 1, which arises from the overruling of a challenge to the array of trial jurors, presents the question whether the jury law, particularly sections 1777, 1779 and 1780 of the Revised Laws, was not rendered unworkable by the amendments made by act 74 of the Laws of 1905. It is contended that sections 1779 and 1780 were left without sufficient amendment to be reconcilable with the amendments made in section 1777. The difficulty arises chiefly from the fact that two lists, one for trial and one for grand jurors, are provided for by section 1777 as amended, instead of one list as previously for all jurors, while the other two sections seem at first impression to contemplate in their amended form as well as previously only one jury box for the names of all jurors. It must be conceded that the amendatory act is somewhat of a botch and leaves the law in a very unsatisfactory state, but it seems to us that the act as a whole shows clearly what the intention of the legislature was, and that the different parts may be harmonized without undue violence to their wording.

Section 1777 previously provided that jury commissioners should prepare a list of persons liable to serve during the year whether as trial or grand jurors, and section 1779 provided that the clerk of the court should deposit all the names on that list in a "jury box" and then select by lot two smaller lists of names and deposit them in a "grand jury box" and a "trial jury box" respectively, and then from these respective boxes select by lot still smaller lists of names of persons to serve as grand and trial jurors respectively for the particular term. Section 1777 as amended provides that the jury commissioners shall prepare two lists of persons to serve as grand and trial jurors respectively instead of one list as previously and section 1779 as amended accordingly omits the provision for selection by the clerk of two lists, one to be put in a "grand jury box" and the other in a "trial jury box"—that having already been practically accomplished by the jury commissioners under section 1777 as amended—and then provides merely for the selection by the clerk of the smaller lists of persons to serve as grand and

trial jurors respectively for the particular term. It is clear that the legislature intended that the names of persons selected by the jury commissioners and liable to serve as grand jurors and trial jurors respectively should be kept in separate boxes and this intention may be given effect by construing the word "jury box" when used in the sections following section 1777 to mean the appropriate jury box according as grand or trial jurors are referred to and not as meaning the same jury box irrespective of whether grand or trial jurors are referred to and by construing similarly other words when used in the singular or without some such word as "appropriate" or "respective."

Exception 3 was taken to the allowance of the following question put to the complaining witness at the close of her direct examination after she had testified as to what the defendant had done to her: "This thing that this boy did to you that day at the reservoir, did you want him to do this or not?" The objection to the question is based solely on the ground that it was leading. In our opinion it was not leading and even if it were its allowance would not be sufficient ground for reversing the verdict and granting a new trial. See 1 Wigmore, Ev., Secs. 770, 772.

Exceptions 4 to 14 involve the question of the admissibility of evidence introduced to show a confession on the part of the defendant in stating, at his examination before a district magistrate sitting as a committing magistrate, that he was guilty. The magistrate testified that the defendant was brought before him by the deputy sheriff on a charge of rape, and that he entered the charge in his record book. He then produced the book and read the charge as entered by him and proceeded to testify as follows: "I read this charge to the defendant. I read it to him and to his attorney and I asked them if they understood the charge or not. The defendant answered that he understood. The court then questioned him, 'Are you guilty as charged or not guilty?' The court then asked him again 'Do you understand, do you fully understand this charge against you or not?' The defendant said 'Yes.' I again asked him,

'Are you guilty as charged or not?' He again replied he was guilty as charged. I then entered in this book the plea of guilty as charged." He further testified that he then said that the charge had to be taken to a higher court and that he had no right to impose punishment; that he then wrote in his book that it was a case of commitment and signed his name. He testified also that the defendant appeared to be in his right senses; that his attorney and several relatives and others were present and that neither he, the magistrate, nor any other person in authority used any threat, promise, inducement, coercion or deception of any nature in order to induce the plea of guilty. The page of the book containing the record of the proceedings as described by the magistrate was then offered and admitted in evidence.

It is not disputed that proper evidence of the confession was admissible so far as the circumstances under which it was made were concerned, that is, that the circumstances were not such as would tend to produce an untrue confession. See 1 Wigmore, Ev., Secs. 842, 848-852. The sole contention is that the evidence introduced was not the proper evidence of the fact sought to be proved and particularly that the record book was inadmissible and that the only use that could properly be made of it would be to refresh the memory of the witness after a proper foundation had been laid by showing that the witness could not testify to the facts without so refreshing his memory. It is unnecessary to say whether this was not the only use to which the book was put, that is, to refresh the witness' present memory or to show his past recollection, up to the time when it, the record itself, was introduced in evidence after the witness had given his testimony, or whether the record itself was not admissible in evidence for the purpose of showing strictly official or judicial acts as distinguished from mere statements of the testimony of witnesses or other matters not strictly official or judicial acts. (See Rev. Laws, Secs. 1673, and cases cited in the note, 1873, 1934, 1940, 2806; 2 Wigmore, Ev., Sec. 1349; 4 Id. Sec. 2450.) It is clear that the record was admis-

sible in part at least, if not as the magistrate's report of the defendant's statement, as the defendant's statement itself in writing—his oral acknowledgment of its correctness being regarded as the equivalent of his signing it. See 2 Wigmore, Ev., Sec. 1328. It was entirely competent either for the magistrate to read the charge as entered by him or for the entry itself to be introduced and the magistrate to testify that he read it to the accused and that the accused admitted its correctness or stated that he was guilty as so charged. Even if the record were not admissible as such, its contents were already properly before the jury. The magistrate himself had testified that he read the charge as so written to the accused and that the latter stated that he was guilty as so charged, and to that there could not possibly be any objection. It was clearly unnecessary to put the record itself in evidence but if inadmissible its admission was as harmless as it was unnecessary.

Exception 19 was taken to the refusal to give the jury the following instruction:

"If the jury believe, from the evidence, that at the time the rape is alleged to have been committed, the prosecuting witness had it in her power to resist the defendant and prevent the offense by kicking, striking and biting him, or by any other mode calculated to repel his attack and that she failed to make all the resistance then in her power to make, then this is a circumstance that the jury should take into consideration with all the other evidence in the case and as tending to show that no rape was committed.

"If the jury believe from the evidence, that the force and resistance used by the prosecutrix and relied on by the prosecution for a conviction at the time of the commission of the alleged rape, were so feebly exerted by her as to have invited rather than discouraged the advances of the accused, they may well doubt whether the rape was committed, and, if they do so doubt, they should find the defendant not guilty."

This requested instruction was objectionable in some respects. For instance, the first paragraph was not broad enough to cover an excusable failure to resist in the manner specified by reason of fear due to threats with a drawn knife and other conduct by

the defendant, and the second paragraph was inappropriate in view of the evidence as to what resistance was actually made and what was actually done by the defendant to overcome such resistance. This subject was covered though perhaps not as fully as it might well have been in the instructions that were given, and the point just stated was set out in the following passage, the meaning of which is clear, though apparently the reporter did not take it down accurately:

"As to the exertion of force to repel the commission of rape. If you find from the evidence of Angeline that she did resist as far as she was able, or through fear by reason of threats by defendant on the exhibition of a knife in a threatening manner, to compel her consent; then if you so find it is for you to consider whether her resistance was overcome by her fear of great bodily harm, and if you so find from the evidence beyond reasonable doubt, then resistance to her utmost ability would not be required by her."

Exceptions 2, 15 and 17 are abandoned and exceptions 16, 18 and 20 to 25 inclusive require no comment.

The exceptions are overruled.

*M. F. Prosser, Deputy Attorney General, (John D. Willard, County Attorney of Kauai,* on the brief) for the prosecution.

*W. T. Rawlins* for the defendant.