MICHAEL SALERNO, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

75 N. W. 2d 362

Filed March 9, 1956. No. 33873.

Schrempp & Lathrop, for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Homer L. Kyle,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

Plaintiff in error, Michael Salerno, 18 years of age, hereafter called the defendant, was charged by indictment with rape. The alleged offense occurred on July 16, 1954. Defendant pleaded not guilty and on a trial to a jury he was found guilty and sentenced to serve 10 years in the penitentiary. He thereupon prosecuted error to this court. The defendant assigned as error that the evidence was insufficient as a matter of law to sustain a conviction for the crime of rape and that the sentence imposed was excessive.

The evidence shows that the defendant on the evening of July 15, 1954, was in the company of Eugene Friis, Bernie Kincaid, Richard Guerrero, Fred Edmunds, and Norman Guerrero. The six of them drove around Omaha in an automobile owned by Friis and finally stopped at a secluded spot near the Missouri River dike in the Carter Lake region where they remained from 7:30 p. m., to 1 a. m. They left this area and started for the city, when they mistakenly turned the wrong way and came to another secluded spot near Nineteenth and Fort Streets. At this point they found a pickup truck parked which was occupied by one Donald Stuhr and the prosecutrix, Vida Buchholz. They parked their automobile across the road in front of the truck. Three of them, including the defendant, engaged in an argument with Stuhr, threatened to beat him up, took his glasses from him, and threw his car keys away. In the meantime the other three young men forced the prosecutrix to get out of the truck. She testified that she resisted and pleaded with them to leave her alone, to no avail. She stated that at one time she was left in the custody of Norman Guerrero and that she was able to break away

from him. She ran and was tripped up by Guerrero from behind, causing her to fall and bruise her arms and hands. She testified that she screamed and cried, and was forced into the automobile. The six men got in the car and drove to another secluded spot about a mile and one-half away. The evidence is that Kincaid, a man weighing 200 pounds, got in the back seat with her, proceeded to strip off her clothes, and commit a rape upon her. The evidence was that after completing the act, Kincaid held her until Norman Guerrero got in the car and the latter proceeded forcibly to have sexual intercourse with the prosecutrix. Norman Guerrero was followed in turn by Richard Guerrero, Edmunds, Friis, Salerno, and Kincaid a second time. The evidence of prosecutrix is that one of her arms was under her in such a way that she could not use it, and that she was wholly unable to cope with these men with the other arm.

The six men took her near her home and let her out at about 5 a. m. Her mother, Mrs. Florence Buchholz, and Mr. and Mrs. Donald Stuhr were present when she arrived home. They testified that her hair was messed up, her clothes disarranged, she was bleeding about the head and arms, there was blood on her blouse, and that she was nervous and hysterical. She was removed to a hospital where pictures were taken of her which showed the outward injuries she had sustained. She was examined by her physician, who stated that there was evidence that she had recently had sexual intercourse and suffered injuries in the vaginal area that were the result of violence.

The defendant testified substantially to the same state of facts to the point where the six men and the prosecutrix arrived at the scene of the alleged rape. He said that all left the automobile except the prosecutrix, Kincaid, and himself. He said he told Kincaid to leave prosecutrix alone, but left the automobile when told to do so by Kincaid. He said he left the group and went north to a pier overlooking the river where he

waited for approximately 2 hours until the others were ready to leave. He said he never at any time had any sexual relations with the prosecutrix and had no actual knowledge of what occurred. His evidence as to what happened at this point in the episode is wholly uncorroborated. ₐ

The evidence further shows that one Lesch lived about a block from the point where prosecutrix was taken from the pickup truck. He said he heard loud talk and heard a woman scream as the Friis car drove away. Lesch further testified that Stuhr came to his house and called his wife to bring out another set of car keys. The police were notified of the occurrence at that time. Norman Guerrero, Friis, and Edmunds were apprehended early the next morning. The defendant, Kincaid, and Richard Guerrero heard of the arrest of the other three and they immediately fled the state. They were apprehended at Holton, Kansas, and were returned to Omaha the next day.

The evidence recites the lurid details of the crime. It shows beyond question, if the State's evidence is believed, that every element of the crime of rape was established. The defendant denies that he participated in any manner. The jury evidently believed the evidence of the prosecutrix and her corroborating witnesses, and gave consideration to the fact that defendant participated in the enterprise from its inception and sought to avoid punishment by flight into another state. The jury had a right to consider these matters. The evidence clearly sustains the finding of the jury that defendant raped the prosecutrix at the place and time charged. The jury is the judge of the credibility of the witnesses who testified before it and of the weight to be given to their testimony, and, unless the verdict of the jury is clearly wrong, its verdict will not be disturbed on appeal. Onstott v. State, 156 Neb. 55, 54 N. W. 2d 380; Lovings v. State, 158 Neb. 134, 62 N. W. 2d 672.

The defendant urges that even if the court finds that the evidence was sufficient to support a finding that he had sexual relations with the prosecutrix, it is not sufficient to show that he exercised force or that she resisted to the extent the law requires. We point out that extreme violence was engaged in by Kincaid when he first raped the prosecutrix. It is natural that her physical resistance became less forceful as these six strong men in turn employed their strength in accomplishing the criminal acts. The evidence is that she was reduced to a state of crying and pleading. Under such a situation it is for the jury to determine whether or not the degree of resistance exhibited by the prosecutrix was sufficient to meet the requirements of the law to sustain a conviction. The evidence shows that the defendant and his companions were heedless of the pleas of the prosecutrix. They cursed and swore, and threatened violence if resistance was made. That prosecutrix was forced to yield, not only by threats made but also by the exercise of violence upon her person, is sustained by the record. The rule is stated in Cascio v. State, 147 Neb. 1075, 25 N. W. 2d 897, as follows: "The degree of force required is relative, depending upon the particular circumstances, but in any such case it must be sufficient to subject and put the dissenting woman within the power of the man, and thus enable him to have carnal knowledge of her, notwithstanding good-faith resistance on her part. In that connection, whether carnal knowledge was forcible and against her will or with her consent, is ordinarily indicated by resistance or lack of it by the woman. While the degree of resistance required is also relative, depending upon the particular circumstances, the general rule is that a mentally competent woman must in good faith resist to the utmost with the most vehement exercise of every physical means or faculty naturally within her power to prevent carnal knowledge, and she must persist in such resistance as long as she has the power to do so until the

offense is consummated." Under all the circumstances shown by this record, the jury could properly find that prosecutrix resisted this gang of men in good faith and to the utmost of her ability.

The defendant asserts that the sentence of 10 years in the penitentiary is excessive. The Legislature has fixed the penalty for the crime of rape at imprisonment in the penitentiary for a term of not more than 20 nor less than 3 years. § 28-408, R. R. S. 1943. The sentence was one-half of the maximum penalty. It was assessed by the district judge who saw and heard the witnesses and had full opportunity to make a proper investigation before sentence was imposed. We do not think there is even a semblance of merit to the defendant's contention that the sentence was excessive.

The record shows that the defendant and his companions assaulted the escort of the prosecutrix and forcibly took her in their automobile against her will. The evidence indicates that none of them knew the prosecutrix and that the only possible reason for their conduct was to carnally know her. The crime appears to have been premeditated and joined in voluntarily by each of the six men. The defendant attempts to show that he was an unwilling participant and that extenuating circumstances existed as to him. We find no substantial evidence of such. The crime was a most revolting attack by six lustful men upon one helpless woman. Her pleas and tears were ignored. Her attempt at prayer was ridiculed in vulgar language. Her person was violated seven times in two hours under circumstances that would be abhorrent even to the law of the jungle. The public is entitled to protection from gangs of this kind who respect no law, moral or statutory. Such persons forfeit their right to liberty in order that innocent persons may not be required to suffer because of their lawless conduct. It is a case where the penalty must be fitted to the seriousness of the crime. The trial judge undoubtedly recognized these things in the

performance of his duty as he saw it. Under all the circumstances we cannot say that the trial court did not properly exercise his judicial discretion in imposing the sentence he did. We find no mitigating circumstances that appeal to this court as a basis for reducing the sentence imposed on this defendant.

AFFIRMED.