STATE OF HAWAII *v.* HARRY O. DIZON.

No. 4312.

MARCH 25, 1964.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY TSUKIYAMA, C.J.

The prosecutrix was a first-grade school teacher at Waialua Elementary School. On Sunday, March 19, 1961, she was alone in her classroom engrossed in the act of decorating the room for the approaching Easter season. When she arrived in midmorning, there were two other teachers working in another classroom. The second teacher, she noticed, left the school about noontime, the first having left sometime prior thereto. The prosecutrix was seated at her desk cutting letters spelling "Happy Easter" with a pair of scissors when suddenly she beheld a completely nude man advancing toward her on tiptoes. He was masked and his arms were raised over his head in a menacing manner. Startled and horrified she attempted to retreat but the furniture obstructed her way. When the man was upon her, she struck out with the scissors in her hand and inflicted on his right palm a laceration. A struggle ensued and as both fell to the floor, he wrenched the scissors from her hand and threw it across the room.

The defendant, admittedly the assailant, was nineteen years old, six feet tall and weighed about one hundred sixty-five pounds, while the prosecutrix was fifty-eight years old, five feet two inches in height, and weighed about one hundred twelve pounds. Moreover, the prosecutrix had sustained a fracture of her tenth thoracic vertebra

446

about two years prior to this incident and was not completely relieved from such ailment. Testifying in regard to her physical condition, she stated: "I'm always bothered by a back ailment, it's been in existence for some time, by the right lower shoulder and the right hip; that is, high."

Testifying further as to what occurred when the assailant advanced toward her, she said: "I got past that area of two lockers, backing and backing, when he came upon me, seized me. We grappled. I managed to turn around with my back this way, coming back. We got into the area between the two sets of lockers and my desk and I was maneuvered onto the floor. * * * I struggled, I talked. I remember talking constantly. I knew what was going to happen, by then I was well aware. He had said nothing. I remember distinctly saying, 'You don't want to do this.' "

Turning deaf ears to her plea, the assailant forcibly removed her clothes, first her blouse by ripping off the buttons and then her pedal pushers and panties, leaving only the camisole which fit so tightly that he could not remove it. "I kept trying to get up and my right shoulder, constantly pushed down," she testified. Finally subduing her, he consummated the carnal attack.[1]

Having accomplished his purpose, the assailant quickly left the room, picked up his clothes from a bench just outside the room, dressed and made his exit from the school grounds by scaling a wire fence.

The prosecutrix immediately thereafter went to a teacher's cottage located across Haleiwa Road and from

---

[1] Excerpt from prosecutrix's testimony in answer to questions by prosecuting counsel:

"Q Did he have any—I'm asking you, at that stage, what, if anything, did the defendant do to you?
"A He entered my body.
"Q Now when you say he entered your body, what do you mean?
"A He forced his penis into my vagina.
"Q And how do you know this, Miss [prosecutrix]?
"A Because I felt it."

there reported the incident to the police. When apprehended and examined with his consent, defendant was found to have numerous scratches on his body, a one and a half-inch laceration on his right palm and a tattoo of the name "Harry" on the right shoulder which the prosecutrix had described to the police in identifying her attacker.

Examination of the prosecutrix too revealed that she was suffering from scratches, abrasions, fractures of the fourth and fifth ribs, a fracture of the sternum, and an injury to her jaw. A pelvic examination made shortly after the attack showed the presence of live sperm in her vagina.

Defendant, Harry O. Dizon, was indicted and tried and the jury returned a verdict of guilty of rape. Appealing from the conviction and judgment of the First Circuit Court, defendant is now before this court seeking reversal for either an acquittal or a new trial.

It is to be noted that in addition to the foregoing facts, certain other features which appear to have a significant bearing on the case are disclosed by the evidence. Defendant, in his testimony as well as in his signed statements, freely admitted that his sole purpose in entering the classroom where the prosecutrix was working was "to have sexual relations"; that he entered naked and face-masked intending to "just scare her"; that when she saw him, she was frightened; that he, referring to the laceration on his palm inflicted by the scissors, formed the intent to "rape" her "After I felt the pain in my hand."[2]

---

2 Excerpt from defendant's signed statements: (Questions by Detective Mossman)

"Q   Did you frighten the victim, Miss [prosecutrix], when she saw you, was she frightened?

"A   Yeah.

"Q   Can you describe if she had any type of expression on her face?

"A   No, I couldn't say.

"Q   During all this time, was your penis normal?

The prosecutrix gathered and took away her blood-stained clothes which were scattered on the floor, but four pearl-colored buttons, identified as those ripped off her blouse, were later found on the floor and picked up by the investigating detective. Upon laboratory examination, the bloodstains were found to be of Type "O" blood. Defendant stipulated that his blood was Type "O".

---

"A Yes.
"Q No erection at all?
"A No.
"Q When did you first get an erection?
"A After she fell down and I took the scissors away.
"Q When did you form the intent to rape the victim, Miss [prose-cutrix]?
"A After I felt the pain in my hand.
"Q What pain are you referring to?
"A The cut on my palm.
"Q Is that the cut that you referred to in your statement that you received from the scissors?
"A Yes.
"Q Is that when you decided to rape the victim?
"A Yes.
"Q Is that before she fell down?
"A No, after.
"Q When did she inflict the injury to your hand?
"A Between the time she fell down and I took away the scissors.
"Q When did you get an erection at that time?
"A After I took away the scissors.
"Q Did you have her clothing off then?
"A No.
"Q Had you taken her clothing off?
"A No.
"Q In other words you got an erection after you took her clothing off?
"A Yes.
"Q When she was down on the floor after you had removed her pedal pushers and her panties, what did you do?
"A Try to rape her.
"Q And why did you try to do this?
"A Trying to have sexual intercourse.
"Q By doing just that?
"A (no answer)
"Q Did you try to get her legs apart?
"A Yes.
"Q And how did you do this?
"A (No answer)
"Q Did you use your hands or your own legs?
"A Used my hands.
"Q Both of them or one?
"A Both of them."

X-rays and diagnosis by Dr. F. Munson, Waialua Plantation General Hospital, showed that the prosecutrix's fourth and fifth ribs were fractured, her sternum or breastbone fractured, and her tenth thoracic vertebra fractured. Dr. Munson's report that the last mentioned fracture could be old or new confirmed the prosecutrix's testimonial reference to her rib injury sustained two years before the attack. Velma Eaton, registered nurse at the same hospital who attended the prosecutrix shortly after the attack, testified that the patient had an abrasion on her back and on her left arm and a reddened area across her chest; that she complained of back and chest pain; that the abrasion on her back was about the size of her, the witness' hand. The prosecutrix herself testified that she had a large bruise on her right shoulder blade and that she could not eat supper that night because of pain in her jaw.

Defendant, on the other hand, when apprehended and examined on the same day was found to have, in addition to the tattoo and palm laceration heretofore mentioned, fresh abrasions and scratches on his upper left and right arms, an abrasion on the left side of his throat, and another on the left side of his body above the hip.

The defense vigorously pursued the point that the prosecutrix did not scream or make every endeavor to repulse the assailant. Confronted by a police report that when first interviewed she had stated that she did not scream, the prosecutrix testified "I remember I screamed at that time when he touched me but I didn't remember it until later when I tried to go over the whole thing." Testifying further, she stated that she tried constantly to talk him out of it.[3]

---

[3] Excerpt from prosecutrix's testimony : (Questions by defense counsel)

"Q   Okay. Is it or is it not true that you did absolutely nothing to prevent this man from getting to you?

"A   I backed away from him, I tried to find a way out.

450

Defendant first specifies as error the trial court's refusal to give defendant's requested instruction number one which reads:

"In the absence of threats, or other things which make resistance impossible, there must be not only an entire absence of mental consent or assent, but there must be the most vehement exercise of every physical means or faculty within the woman's power to resist penetration and a persistence in such resistance until the offense is consummated.

"The term 'rape' imports not only force and violence on the part of the man, but resistance on the part of the woman. There must be force, actual or constructive, and resistance.

"In the absence of proof of resistance, consent is presumed. Mere general statements of the complainant that she resisted are not sufficient but the specific act of resistance must be shown. The dissent and repulsion must be shown beyond a reasonable doubt."

From the earliest days of jurisprudential history the crime of rape has been generally defined as the carnal knowledge of a female perpetrated forcibly and without her consent. In this jurisdiction the statute defines rape as an act in which a man "ravishes or has carnal intercourse with any female, by force and against her will." R.L.H. 1955, § 309-31. The absence of consent necessarily implies resistance on the part of the female to preserve

"Q   Do you deny telling Detective Apoliona in his interview with you at about 4 o'clock of that afternoon that you did not do anything to prevent him from getting to you?
"A   I deny that.
"Q   You deny that. Did you speak to this man at all?
"A   Yes, I did, I talked as though I were talking to someone who could be talked out of it. I know this age boy, my job was—with the Red Cross.
"Q   I see. Now how many times did you talk to him or shout to him?
"A   I believe I talked constantly—
"Q   You talked constantly?
"A   —from the time he touched me."

and protect her honor and the use of force on the part of the man to accomplish his purpose. The very nature of rape connotes forcible and unpermitted physical contact and an overt demonstration of resistance by the unwilling female. Ordinarily, passive or tacit resistance is insufficient to constitute the crime. In other words, the resistance must be in good faith, real, active, and not feigned or pretended. The extent of resistance and the degree of force, however, vary with the peculiar circumstances of each case.

Though the essential element of resistance has been described in various language by the textual and decisional authorities, there is concurrence in the general rule that as proof of nonconsent, it must be shown beyond a reasonable doubt that the woman attacked has made a genuine effort to prevent her assailant from accomplishing the act of sexual intercourse. A divergence is observed, however, between cases which have adhered to the rigorous rule requiring the most vehement resistance or resistance to the utmost and cases which have modified or repudiated that rule. The strict rule is treated in 33 Cyc., *Rape,* p. 1427, as follows:

"In the absence of threats, or other things which make resistance impossible, there must be not only an entire absence of mental consent or assent, but there must be the most vehement exercise of every physical means or faculty within the woman's power to resist penetration, and a persistence in such resistance until the offense is consummated. The term 'rape' imports not only force and violence on the part of the man but resistance on the part of the woman. There must be force, actual or constructive, and resistance. In the absence of proof of resistance consent is presumed. Mere general statements of prosecutrix that she resisted are not sufficient, but the specific acts of resist-

ance must be shown. The dissent and repulsion must be shown beyond a reasonable doubt. * * *"

It is significant that an examination of the judicial decisions in recent years shows that the above-quoted formula or the strict rule requiring resistance in the superlative degree has not been given literal interpretation or inflexible application in most jurisdictions. The following statement is noteworthy as indicating the modern trend in the development of the rule of resistance: "* * * the rule of 'resistance to the uttermost', or 'resistance to the utmost' has been repudiated or relaxed, but not to the extent of doing away with the need of showing some resistance or showing facts which fairly indicate some good reason for not resisting. Even where the term 'utmost resistance' is still employed, it is held to be a relative term, which actually means the greatest effort of which the woman is capable to foil the assailant and preserve the sanctity of her person." 75 C.J.S., *Rape*, § 12, pp. 476-477. See also 44 Am. Jur., *Rape*, § 7, pp. 905-906; Wharton, *Criminal Law and Procedure*, pp. 639-640 (1957); 2 Bishop, *New Criminal Law*, (8th ed.), pp. 648-649; *Bulls* v. *State*, 33 Okla. Crim. 64, 241 Pac. 605, 606; *State* v. *Roberts*, 91 Utah 117, 125, 63 P.2d 584, 587 (1937); *Magwire* v. *People*, 77 Colo. 149, 235 Pac. 339; *People* v. *Bales*, 74 Cal. App. 2d 732, 169 P.2d 262.

In assigning as error the trial court's refusal to give defendant's requested instruction number one, defendant forcefully contends that the court disregarded the rule pronounced in *Territory* v. *Nishi*, 24 Haw. 677 (1919). He asserts that under that rule the requested instruction, if given, would have properly advised the jury that before they could convict the defendant, they must first find that the prosecutrix did exhibit "the most vehement exercise of every physical means or faculty within the woman's power to resist." While at first blush such assertion ap-

pears to be impressive, it must be noted that on the basis of the factual circumstances involved therein, this court found warrant in the *Nishi* case to syncretize the law of the case with the peculiar facts borne out by the evidence.

In *Nishi* this court dealt with the following salient facts: the prosecutrix and the defendant were friends and companions, having worked together in the same factory; the two, accompanied by a second girl, went for an outing to Moanalua Park; while returning to the government road, the trio traversed an unfrequented path; at the suggestion of the defendant, they turned off the path to a grassy spot; there and in the presence of the second girl, the defendant threw the prosecutrix to the ground and started to take off her drawers; the second girl then walked out to the government road. The prosecutrix testified that she loudly called the second girl for about five minutes but also testified that the defendant himself called three or four times. She admitted that she made no effort to struggle or foil the defendant. The second girl testified that when she left the two on the grassy spot, the latter appeared to be just playing at the time; that she heard both the prosecutrix and the defendant call her to return; that when she saw a soldier coming, she called out a warning. The defendant thereupon desisted and they all proceeded to the government road where the prosecutrix asked the soldier to help. There was no evidence, however, that the prosecutrix made any complaint to the soldier of the alleged assault by the defendant. At the trial the defendant admitted the act of sexual intercourse, stating that the prosecutrix consented thereto. Neither the prosecutrix nor the defendant bore any mark of violence, and the clothing of the prosecutrix received in evidence showed no tearing or disarray. Moreover, the prosecutrix admitted on cross-examination that a few months before the Moanalua Park incident, she and another man were at-

tempting sexual intercourse when they were interrupted by an approaching automobile.

In the light of the foregoing state of the evidence, this court in that case, reviewing the evidence, held there was a dearth of showing that the ability of the prosecuting witness to resist was overcome or impaired, stating that her resistance, "if in fact there was any, was of such equivocal character as to suggest actual consent." Compatibly, quoting from 33 Cyc. 1427, *supra*, the court invoked the strict rule of resistance befitting the facts shown by the evidence.

As to the instructions, however, the court did no more than to hold that, in the absence of any evidence of threat or other facts to justify a finding that the prosecutrix was overcome and unable to resist, the defendant was entitled to an instruction that it was not rape unless the prosecutrix "did everything she could under the circumstances to prevent the defendant from accomplishing his purposes." In the present case the facts and the requested instruction are markedly different.

In his reliance upon the *Nishi* case, defendant has obviously allowed himself to be guided principally by the headnotes. It is well settled in this jurisdiction that the syllabus does not decide the rule or the law of the case. The court's ruling is to be found within its opinion which "is to be looked to for the original and authentic statement of the grounds of decision." *Burbank* v. *Ernst*, 232 U.S. 162; Black's Law Dictionary (4th ed. 1951) p. 1619.

Moreover, because of varying facts the language used in a particular case cannot be properly applied to or incorporated verbatim into an instruction in another case. Such application is apt to be misleading. *Cf.*, *Territory* v. *Cutad*, 37 Haw. 182, 186; *State* v. *Evans*, 45 Haw. 622, 636, 372 P.2d 365, 374; *State* v. *Clyde*, 47 Haw. 344, 388 P.2d 846.

It patently appears from a careful reading of the opinion in *Nishi* that this court considered resistance as a relative matter and its ruling accorded with the general proposition that, in the absence of threats or impairment of physical or mental faculty, in order to warrant a conviction of rape it must be shown that the woman actually made every effort to repel the carnal attack. Such ruling, it is to be noted, is not inconsistent with an earlier decision on rape. In *Territory* v. *Charman,* 18 Haw. 46, 50-51, this court sustained the trial court's rejection of a two-paragraph instruction,[4] thereby indicating that the utmost resistance rule was not applicable where there was evidence that the complaining witness was deterred from exerting all the resistance in her power by fear of great bodily harm. The first paragraph was found objectionable because it was not broad enough to cover an excusable failure to resist in the manner specified by reason of fear on the part of the prosecutrix due to threats. The second paragraph was found inappropriate in view of the evidence as to what resistance was actually made and what was actually done by the defendant to overcome such resistance.

Noteworthy is the fact that even in those jurisdictions where the utmost resistance rule has been generally applied, the courts have made statements giving recognition

---

[4] Instruction refused in *Territory* v. *Charman, supra:*

"If the jury believe, from the evidence, that at the time the rape is alleged to have been committed, the prosecuting witness had it in her power to resist the defendant and prevent the offense by kicking, striking and biting him, or by any other mode calculated to repel his attack and that she failed to make all the resistance then in her power to make, then this is a circumstance that the jury should take into consideration with all the other evidence in the case and as tending to show that no rape was committed.

"If the jury believe from the evidence, that the force and resistance used by the prosecutrix and relied on by the prosecution for a conviction at the time of the commission of the alleged rape, were so feebly exerted by her as to have invited rather than discouraged the advances of the accused, they may well doubt whether the rape was committed, and, if they do so doubt, they should find the defendant not guilty."

to the fact that resistance is a relative matter. See *Salerno* v. *State,* 162 Neb. 99, 75 N.W. 2d 362 (1956). In *Starr* v. *State,* 205 Wis. 310, 312, 237 N.W. 96, 97 (1931), the court, on the basis of the entire evidence, sustained a rape conviction even though the prosecutrix stated that she "did not resist as much as she could." See *Lewis* v. *State,* 154 Tex. Crim. 329, 226 S.W.2d 861 (1950), where the court recognized that a difference in the degree of resistance might be required where the parties were father and daughter rather than strangers.

Applying the rule of resistance as it relates to the case at bar, we find no warrant to hold, in the light of the facts portrayed earlier in this opinion, that the trial court should have instructed the jury as set out in defendant's number one. The first paragraph of that instruction was objectionable. Let alone the woman's pre-existing physical handicap, the cutting of defendant's hand with her scissors, the scratches inflicted upon his body, her button-ripped blouse and bloodstained clothing scattered on the floor, the abrasions on her body and fractured ribs, sustained by her, the very sight of the six foot, one hundred sixty-five pound defendant, stark naked and face-masked, stealthily tiptoeing and advancing with arms menacingly upraised toward the elderly five foot, one hundred twelve pound woman, in a school building where she was alone, was frightening enough to make her blood curdle. To require the invocation of the utmost resistance rule under such circumstance is nothing short of travesty.

The defendant claims that the prosecutrix did not scream or make an outcry at any time. She was not certain as to that when she was first questioned by the police but testifying at the trial, she stated she remembered, upon reflection, that she screamed when defendant touched her. In any event, though screaming is an evidentiary fact which is pertinent to the issue of resistance, it is not re-

quired where an outcry is useless or the woman is restrained by force, threat, or fear. *People* v. *Silva*, 405 Ill. 158, 89 N.E. 2d 800 (1950); *Wilson* v. *State*, 49 Del. 37, 57, 109 A.2d 381, 392 (1954), *cert. denied* 348 U.S. 983.

Considering all the facts in this case, this court is satisfied that the jury was amply justified in finding that, under the circumstances, the prosecutrix did all that she thought was possible or that she was personally capable of doing to demonstrate her nonconsent and resistance. Unlike the facts in the *Nishi* case, *supra*, the facts in the instant case do not warrant the application of the utmost resistance rule.

This court, while recognizing that the strict rule might be called for in certain cases when warranted by the facts, is of the view that the allowance of flexibility to the rule is not only logical but is supported by a great preponderance of authorities. Apropos is the statement of the court in *State* v. *Risen*, 192 Ore. 557, 562, 235 P.2d 764, 766 (1951): "There may be cases in which to place undue emphasis upon its [the rule's] requirement improperly will convert the issue into the trial not of the man but of the woman. Resistance is necessarily relative. It is accordingly not necessarily illogical for courts to apply the general rule requirement of most vigorous resistance to common cases and to modify it in varying degrees and peculiar circumstances, and to refuse to apply it to exceptional cases."

We hold, therefore, that there was no error in the trial court's refusal to give defendant's requested instruction number one. While the second and third paragraphs of that instruction perhaps might have been given, the subject matter thereof was sufficiently covered by other instructions as will later appear.

Under specification of error number two, defendant urges that the trial court should not have refused to give

his requested instruction number two, the substance of which was that in order to constitute rape the prosecutrix must have done "everything she could under the circumstances" to prevent defendant from accomplishing his purpose. A similar instruction was involved in *Territory v. Nishi, supra,* 24 Haw. 677, which defendant here embodied verbatim in his requested instruction. However, in view of the requested instruction having been circumscribed by the language "under the circumstances," it might have been given in this case as such instruction does not state the bald rule of "utmost resistance." But we find no prejudicial error in the refusal because instruction number twenty given by the court sufficiently covered the substance of defendant's requested instruction. It is well established that, "when given instructions are legal and appropriate, and cover the whole ground of the instruction asked for, the omission or refusal of the court to rule in the very terms requested" affords no grounds for a claim of reversible error. *King* v. *Ahop,* 7 Haw. 556, 563; *Territory* v. *Marks,* 25 Haw. 219, 222.

Instruction number twenty given by the court reads in part as follows:

"The degree of resistance on the part of the woman must be proportioned to the outrage, and the amount required necessarily depends on the circumstances, such as the number and the relative strength of the parties, the age of the female, the physical and mental condition of the female, the uselessness of resistance, and the degree of force used.

\* \* \* \* \* \* \* \*

"Mere verbal protestations and a pretense of resistance are not sufficient to show want of consent. If the female fails to take such measures to frustrate the execution of the male's design as she is able to make and are called for under the circumstances, the in-

ference may be drawn that she did in fact consent."

It is the view of this court that the foregoing charge, read in light of the whole instruction, fairly and clearly presented the law to the jury. Under the evidence, it was as favorable to defendant as he was entitled to. The "refusal or giving of requested instructions must be interpreted, or considered, in connection with the entirety of the court's charge to the jury." *Territory* v. *Aquino,* 43 Haw. 347, 380.

The trial court is, therefore, not chargeable with error in refusing the instruction requested.

Defendant next challenges as error the giving of the court's proposed instruction number twenty.[5] The ground urged is that the trial court erred in not setting forth "the substantive law of this jurisdiction on the material element of resistance necessary to support a conviction for rape." Obviously, defendant here again relies on the *Nishi* case.

---

[5] Court's proposed instruction number twenty (given as number ten) :

"The law of rape demands that the sexual act be accomplished against the will of the female, which means without her consent. In the ordinary case, when the female is awake, of mature years, of sound mind, and not in fear, a failure by her to oppose the act is consent.

"The degree of resistance on the part of the woman must be proportioned to the outrage, and the amount required necessarily depends on the circumstances, such as the number and the relative strength of the parties, the age of the female, the physical and mental condition of the female, the uselessness of resistance, and the degree of force used.

"The female need resist only until physical penetration occurs, at which time the crime is complete; and her failure to resist after that is immaterial, and she need resist only until resistance becomes so useless as to warrant its cessation.

"Mere verbal protestations and a pretense of resistance are not sufficient to show want of consent. If the female fails to take such measures to frustrate the execution of the male's design as she is able to make and are called for under the circumstances, the inference may be drawn that she did in fact consent.

"And if you should find that although initially the idea of the act was completely abhorrent to her, but that she did in fact ultimately consent prior to penetration, then you cannot find the defendant guilty of rape.

"The fact that consent was reluctantly given is immaterial if in fact it was given.

"If you should find, however, that the female yielded to overpowering force the same is to be construed as submission and not consent."

Defendant argues: "By stating that 'the degree of resistance on the part of the woman must be proportioned to the outrage, and the amount required necessarily depends on the circumstances' the trial court suggested that the complaining witness is not required to resist the defendant's advances with every physical means at her disposal —but rather that some form of lesser conduct will suffice to establish a material element in a conviction for rape." We think that the issue of resistance has been adequately discussed in relation to the first two specifications. Consistently therewith and in the light of the evidence, we are satisfied that the court correctly instructed the jury on the applicable law. We find no error.

Defendant's fourth and fifth specifications will be considered together in that they both relate to instructions covering the element of subjective belief. Errors are claimed in the trial court's refusal to give requested instructions numbers five and six. The former reads: "Where a person in good faith believes in the existence of certain facts, and acts with reference to such believed facts in a manner which would be lawful if the facts were really as he believes them to be, he is not guilty of a crime, although his act is such that if committed or made by one who knew the true facts, it would constitute a criminal offense. Accordingly, if you believe from the evidence that the defendant in fact believed that consent to the act had been given, or you have a reasonable doubt thereon, you must find him not guilty of the crime of rape." The latter reads: "You are instructed that a man will be justified in assuming the existence of consent if the conduct of the female toward him at the time of the occurrence is of such a nature as to create in his mind an honest and reasonable belief that she has consented by yielding her will freely to the commission of the act."

As to the first instruction, it is not only confusing and

misleading but does not contain a full statement of the law. The rule allowing a defense to a crime considered *malum in se* because of a mistake of fact is subject to the qualification that the mistake must not be due to the negligence or carelessness of the defendant. 1 Wharton, *Criminal Law and Procedure,* § 157, p. 382 (1957); 22 C.J.S., *Criminal Law,* § 47, p. 182; 15 Am. Jur., *Criminal Law,* § 306, p. 9.

Generally, when given, if warranted by the evidence, the type of instruction as number six above-quoted is deemed to represent a correct legal proposition. Although defendant has not cited a single case in support of his contention, we find, upon research, that the courts have either given or rejected such instruction only as the evidence relating to the conduct of the woman seemed to warrant or require. *Allen* v. *State,* 87 Ala. 107, 6 So. 370, but see *White* v. *State,* 237 Ala. 610, 188 So. 388; *Foster* v. *State,* 121 Tex. Crim. 499, 53 S.W.2d 54; 75 C.J.S., *Rape,* § 82, p. 578; 44 Am. Jur., *Rape,* § 12, p. 909. It is clear that the authorities generally adhere to the rule that an instruction on the defendant's belief will not be given in the absence of evidence showing some probability that the defendant was actually misled by the conduct of the complaining witness. We think the rule is sound.

As already seen, defendant here admitted his intent to have sexual intercourse and even to "rape" the prosecutrix. The cut on his hand, his bodily scratches, and the injuries inflicted upon the prosecutrix, are all in evidence. Topping it all, defendant further admitted that, after snatching the scissors away from the prosecutrix's hand, he had to use both hands to spread her legs apart. Such facts betray the hollowness of any claim that defendant in good faith believed the prosecutrix consented to his act. Under the circumstances, even if it be assumed *arguendo* that defendant's claim of honest belief were true,

such belief was allowed to exist in his mind only through his own negligence, fault, or carelessness. In such case the rule of mistake of fact, as it appears in instruction number five, would not apply. See *Territory* v. *Kong*, 14 Haw. 610.

Since number five did not properly state the law, number six was not applicable in view of the evidence, and the court gave a sufficient instruction on the specific intent required to convict, we hold that there was no prejudicial error in the court's refusing the two instructions.

The court's rejection of requested instruction number ten is made the subject of defendant's specification of error number six. The court refused to charge the jury that "If the opportunity for outcry existed and was not made, and you are satisfied that such outcry, if made, would have brought assistance, or a reasonable guarantee thereof, or deterred the alleged act complained of, you are justified in finding that consent to the act was given."

The specification is merely glossed over by the parties with but little comment. We find no merit in the claim of error. If given, the instruction would have left the jury roaming in the wilderness of speculation. It would have been confusing and misleading, for no cognizance whatever was taken of the woman's possible state of mind. Furthermore, the failure of an outcry is only one factor to be considered in determining the issue of consent.

We now come to specification number seven relating to the court's refusal to give defendant's requested instructions numbers eleven and twelve. The instructions were cautionary instructions, the gist of which was that great caution must be exercised by the jury in rape cases, requiring an examination of the complaining witness' testimony with close scrutiny and care.

Since Lord Hale (1 Hale, *Pleas of the Crown*, 635) made his observation concerning the difficulty of proof

in rape cases almost two centuries ago, there has been an abundance of discussion and speculation as to the circumstances under which a cautionary instruction must be given. We note from the cases cited by both parties here, coupled with our own research, that the judicial precedents are not in complete harmony. However, one aspect is manifest, that is, the question of propriety of such instruction arises where the testimony of the complaining witness is uncorroborated by other evidence. Significant is the fact that defendant's very instruction number eleven was premised upon the statement "* * * in cases where the State relies upon the uncorroborated testimony of the complaining witness * * *."

In this jurisdiction, until 1932 there was a statutory requirement that in order to convict a defendant upon the charge of rape, the testimony of the prosecutrix must be corroborated by other evidence. Such requirement was removed in 1932 (Session Laws 1932, Act 10, § 2; now R.L.H. 1955, § 309-35). Defendant vigorously contends that the instructions should have been given because the prosecution sought conviction "solely on the uncorroborated testimony of the complaining witness." In the face of the evidence in this case, we can only conclude that defendant's assertion is bottomed upon what appears to be a misconception that there is no corroboration unless an independent witness other than the prosecutrix directly testifies as an eyewitness of what occurred at the scene of the rape. In the instant case, the injuries on the bodies of the participants, the button-ripped and bloodstained clothing, the flight of defendant and his admissions, were all corroborative circumstances. See 44 Am. Jur., *Rape*, § 108, p. 971; *State* v. *Hetland*, 141 Iowa 524, 119 N.W. 961; *cf.*, *Territory* v. *Slater*, 30 Haw. 308.

An examination of a large number of cases indicates that those in which a cautionary instruction was held

proper are generally cases involving children. More recent cases such as *Bradshaw* v. *State*, 211 Ark. 189, 199 S.W.2d 747, *State* v. *Madrid*, 74 Idaho 200, 259 P.2d 1044, *Fulton* v. *State*, 163 Neb. 759, 81 N.W. 2d 177, do not support defendant's contention. Even the case of *People* v. *Williams*, 55 Cal. App. 2d 696, 131 P.2d 851, upon which defendant principally relies, indicates that whether a refusal of a cautionary instruction constitutes prejudicial error depends upon the circumstances of the particular case.

In *Territory* v. *Bodine*, 32 Haw. 528, this court ruled that it was not error to refuse such instruction. There was substantial evidence of corroboration. In *Territory* v. *Hays*, 43 Haw. 58, although the point was not an issue because there was a procedural failure on appeal, this court nevertheless proceeded to discuss the matter and implied that a cautionary instruction would have been proper for "it will be noted that there is not only no corroborating evidence, but the complaining witness' acts and testimony raise considerable doubt as to her veracity." As seen, there was no corroboration in that case.

Neither the prosecution nor defendant has referred to *Territory* v. *Young*, 32 Haw. 628, 656, in which the question was directly presented. This court sustained the trial court's rejection of a cautionary instruction on the ground that it was argumentative and a comment on the evidence. The instruction there was substantially similar to those here involved. Moreover, there was an abundance of corroborative evidence. The ruling in *Young* is completely dispositive of the specification under consideration.

In summation, it is the opinion of this court that the propriety of giving a cautionary instruction in a rape case must be determined by the entire factual circumstances. The absence of corroborative evidence cannot be made the sole test of whether such instruction should

be given. Depending upon the character of the evidence adduced, the instruction, if given in addition to the usual instruction on the credibility of witnesses, may conceivably be unfair to the prosecution. We note as a sidelight that, though it appears to be customary for the defense to request a cautionary instruction, there have been cases in which the prosecution made such request with the defense objecting. In *State* v. *Madrid, supra,* 74 Idaho 200, 259 P.2d 1044, it was the defendant who claimed error in the trial court's giving a cautionary instruction similar to the one here in question, asserting that it was prejudicial to him since it possibly made the jury think the burden was on him to prove his innocence. We conclude that in the case at bar the two requested instructions were properly refused.

Defendant contends under specification number eight that the trial court erred in denying his motions for a judgment of acquittal or for a new trial. Here again, defendant re-emphasizes the argument of lack of any substantial resistance on the part of the prosecutrix and asserts the absence of more than a scintilla of evidence necessary to prove each element of the crime. The cases cited have been examined. We have found none persuasive. In *Ables* v. *State,* 331 P.2d 954 (Okla. Crim.), the evidence was much weaker than in the instant case, yet not only was the conviction affirmed but the utmost resistance rule repudiated. *People* v. *Jaramillo,* 137 Cal. App. 232, 30 P.2d 427, reversed a conviction but the evidence was perspicuously feeble.

We shall not needlessly encumber this opinion by further recapitulation of the evidence in this case. It was amply substantial to support the court's denial of the motions for acquittal or for a new trial. The jury's finding of force and resistance is reflected in its verdict. The jury is the sole judge of the credibility of the witnesses

and the weight to be given to the evidence. *State* v. *Carvelo,* 45 Haw. 16, 33, 361 P.2d 45, 54. This court will not set aside a verdict where it is supported by substantial evidence. *Territory* v. *Young, supra,* 32 Haw. 628, 634.

Affirmed.

*Hyman M. Greenstein* (*Greenstein, Yamane & Cowan*) for defendant-appellant.

*Bert S. Tokairin,* Deputy Prosecuting Attorney, City and County of Honolulu (*John H. Peters,* Prosecuting Attorney), for plaintiff-appellee.