## TERRITORY OF HAWAII *v.* WALTER LEE HAYS, ALSO KNOWN AS WALTER HAYS BLANTON.

No. 4037.

ARGUED OCTOBER 24, 1958.　　　　DECIDED NOVEMBER 18, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

In April 1955 defendant-plaintiff in error was indicted by the grand jury of the circuit court of the first judicial circuit of the Territory of Hawaii for carnal abuse of a female under twelve years of age. The indictment alleged the defendant, in the City and County of Honolulu, and sometime during the months of October and November 1949, did carnally abuse a female child under the age of twelve years named therein. On January 11, 1956, trial of defendant was commenced before a jury in the said circuit. The trial continued until January 26, when the jury returned a verdict of guilty as charged. On February 29, 1956, defendant was sentenced by the court to hard labor in Oahu Prison for a period not to exceed fifty years.

The complaining witness was born July 29, 1939, and on July 29, 1949, was ten years of age. Sometime prior to August 1949 the complaining witness, whom defendant is alleged to have carnally abused, came to live with her mother and with the defendant at the Airways Hotel, located at Enterprise Avenue in the City and County of Honolulu. The complaining witness' half brother during the same year, and prior to August, also came to live with the defendant and complainant's mother. The defendant for a number of years supported the family.

The testimony of the complaining witness is the only evidence of the alleged acts of carnal abuse upon the girl. She testified that defendant tried to have sexual intercourse with her in one of the Airways Hotel buildings in August 1949 and at this time she was upstairs where they were living; that she screamed, that her brother ran upstairs and defendant told her brother that she, the witness, had touched a hot frying pan, whereupon her brother went downstairs. This was denied by the brother.

The complaining witness testified that in October and November 1949 she and the defendant had sexual intercourse against a trailer beside two quonset huts near the Airways Hotel; that this occurred about 7:30 o'clock p.m. while she and the defendant were standing up with her back against the trailer. She further testified that defendant had intercourse with her about four or five times in October, November and December 1949, at the same place and all the acts took place while they were standing up. There was additional testimony, over defendant's objection, that she and defendant engaged in sexual intercourse in the year 1950 about three times at the Moanalua Housing area, and that she had sexual intercourse with defendant in 1951 in Waikiki in his apartment.

The complaining witness testified that the first time she told anyone about having intercourse with the defendant was in the early part of 1953 when she told her mother, who did nothing about it. The next time she told anyone that defendant had had sexual intercourse with her was in February 1955, after the police were called during an argument and fight with the defendant at her mother's place involving her engagement to a married man with two children. Her testimony shows that at that time she had a child. It does not appear when her child was born or who was

the father of the child. It was stipulated by the prosecution and defense that, if the police officer who examined the defendant were called as a witness, he would testify that the defendant denied having sexual intercourse with the complaining witness and that the defendant said that every time they had a fight or an argument, the complaining witness accused him of having had sexual intercourse with her.

Most of the testimony centered around the location of the quonset huts and the distance from each other, the lighting conditions surrounding the same, etc. Most of defendant's evidence and attempted evidence was an effort to show there was no trailer parked between the quonset huts as there was insufficient distance between the two quonset huts to park a trailer.

At the close of the case defendant moved for a directed verdict, which was denied. This is one of the assignments of error.

Other assignments of error related to refusal to admit evidence consisting of maps and photographs of the premises where the alleged intercourse took place, to the refusal to allow defendant on cross examination of the complainant to question her regarding other acts of sexual intercourse between her and third parties, the refusal of the court to permit defendant to prove such acts of intercourse, and in permitting a physician to testify as to his examination of the complaining witness shortly prior to the trial and testify regarding what he found as to the fact she was not then a *virgo intacta.*

It will be noted that the testimony of the complaining witness was the only testimony of the carnal knowledge of her by defendant and that her testimony was without any corroboration whatever. Many States, some by statute, hold that the testimony of the prosecutrix must be corroborated, but this court has held that corroboration of the complaining witness is not absolutely essential. (*Rep. Haw.* v. *Parsons,* 10 Haw. 601; *Territory* v. *Slater,* 30 Haw. 308.) In an unlawful sexual intercourse case "a conviction may lawfully be had upon the uncorroborated testimony of the prosecutrix." (*Territory* v. *Slater, supra.*)

But there is a great reluctance to sustain such conviction for, as stated in 44 American Jurisprudence, *Rape,* section 107, page 970:

"Even though the uncorroborated testimony of the prosecutrix may be sufficient to sustain a conviction of rape, to do so it must be clear and convincing, and the circumstances surrounding the parties at the time must be such as to point to the probable guilt of the accused, or *at least corroborate indirectly* the testimony of the prosecutrix." (Emphasis added.)

In some jurisdictions it is held the duty of the court to caution the jury that a charge of rape is easily made and difficult to disprove, that rape prosecutions are attended with great danger and afford an opportunity for the display of malice and private vengeance, such charges being easily invented and maintained, and a jury should hesitate to convict solely on the testimony of the prosecutrix.

This court has held (*Territory* v. *Bodine,* 32 Haw. 528) that in a prosecution for assault with intent to rape, where the court has fully and correctly instructed as to the ingredients of the crime charged and as to the degree of proof necessary to convict, "it was not error to refuse defendant's request for an admonitory instruction to the jury to be cautious in view of the particular nature of said crime." However, there was corroborating testimony in the *Bodine* case, so the statement in that case is dictum and that case is not contrary to those authorities that hold where there is no corroborating testimony a defendant is entitled to a cautionary instruction.

In the present case, the court refused an admonitory instruction requested by the defendant, who took exception to such refusal, but as he did not assign this as error it is not necessary for us to pass upon the question whether as a matter of law where there is no corroborating evidence of a complaining witness' testimony the defendant is entitled to an admonitory instruction.

However, it will be well to examine a few statements from the cases.

In *People of the State of California* v. *Lucas,* 105 P. (2d) 102, the syllabus reads as follows:

"In prosecution for contributing to delinquency of a minor, accused should be afforded the benefit of a cautionary instruction to the general effect that such a charge is easily made and

difficult to disprove for which reason the testimony of prosecuting witness should be examined with caution."

The books are full of cases showing that this charge has often been the result of malice and hidden motives; in fact, we can even go to the Holy Writ itself. (See Potiphar's wife v. Joseph, Genesis, c. 39.)

In *State* v. *Goodale*, 210 Mo. 275, 109 S. W. 9 (1908), the court said:

> "The admonition of Lord Hale that 'it must be remembered that this is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent,' must be heeded. * * * it is nevertheless equally well settled that the appellate court will closely scrutinize the testimony upon which the conviction was obtained, and, if it appears incredible and too unsubstantial to make it the basis of a judgment, will reverse the judgment."

In the present case it will be noted that there is not only no corroborating evidence, but the complaining witness' acts and testimony raise considerable doubt as to her veracity. For example, the complaining witness told no one about this until years later and, although complaint or early complaint is not necessary in statutory rape as consent is not one of the elements involved, yet the circumstances under which the complaint was made in this case must be considered when it may possibly show malice and hidden motives.

More important still, at the time the complaining witness brought this matter to a head and complained of defendant's rape six years theretofore, the testimony shows there had been a quarrel between her, her mother and the defendant, in which her mother and the defendant opposed her engagement to a man not yet divorced. This quarrel reached such a point that the complaining witness claims the defendant punched her twice and the police were called, and this matter was brought forth and the charge made as a result. Also, the complaining witness testified that she was afraid that the defendant "would do something to my baby."

Again, the complaining witness denied that cordial relations existed between her and defendant and she denied she was accus-

tomed to call him "father." This is contradicted by the testimony of a neighbor and close girl friend; further, by a photograph of the complaining witness which she inscribed to her father; as additional evidence going to complaining witness' veracity, her brother denied her statement that he ran to her rescue when defendant first tried to have sexual intercourse with her in August 1949.

In a trial for statutory rape, a physician's testimony of the physical condition of the complaining witness is highly relevant and of great probative value where the examination is made immediately or soon after the alleged attack. Relevancy and probative value of such evidence decreases with the passage of time and the danger of undue prejudice increases therewith. In the present case the physician testified that the prosecuting witness at the time of his examination, some six years after the alleged rape, was not a virgin. This in no way indicates when first such condition existed or who was responsible for it. The physician's testimony in no way connects the defendant with the crime charged.

*People* v. *Cornelius,* 55 N. Y. Supp. 723, held that the result of an examination of the prosecuting witness four years after the alleged commission of the crime was improperly received.

*People* v. *Butler,* 66 N. Y. Supp. 851, in a trial for rape, held that the introduction of evidence of a physician that the prosecutrix was not a virgin some twenty months after the alleged crime constituted reversible error. It stated:

> "The only legitimate purpose of the testimony was to corroborate the statement of the prosecutrix that the defendant had sexual intercourse with her on the 30th day of August, 1896. Did it in the slightest degree tend to establish that fact? The evidence objected to, if true, and if given all the force which can be legitimately claimed for it, simply established the fact that some time prior to the examination, which was 20 months after the alleged crime was committed, the prosecutrix had had sexual intercourse with some one. Whether 6 weeks before the trial, or 6 years, is in no manner indicated, and could not be. Whether sexual intercourse was indulged in by the prosecutrix at or about the time of the commission of the alleged crime was not and could not be discerned by such examination, and it can-

not be pretended that the evidence of the physician gave any information upon that proposition. Yet the inference is sought to be drawn from the evidence (and such was clearly the purpose in introducing it) that prior to the time of the trial the prosecutrix had had sexual intercourse with some one, and therefore it is probable that the defendant had sexual intercourse with her 20 months before."

The crime charged in the indictment naturally tends to enlist the sympathies of all men, including jurors, in favor of the victim. In such a case the court should be extremely careful that no evidence tending to incite and influence the passions or resentments of the jurors, and which does not tend to support the evidence of the prosecutrix or to connect the defendant with the commission of the crime, should be permitted to go to the jury. The more heinous the crime, the more care must be exercised by the presiding judge to see that defendant's rights are protected and that prejudicial evidence is not admitted.

We think that upon the evidence adduced, verdict should have been directed in favor of the defendant.

It was error to admit the physician's testimony of the result of his examination of the witness some six years after the alleged rape and after the complaining witness had given birth to a child.

The court refused to permit certain exhibits of the defendant consisting of maps and photographs dated November 22, 1949, made and kept in the permanent files of R. M. Towill Corporation, Ltd., who were civil engineers, surveyors and aerial mapmakers. The person who took the photographs was not present and able to identify the photographs and maps; however, testimony of Lewis M. Schraeder, who lived near the premises where the alleged offense occurred in October and November 1949 and was familiar with the premises at that time, was to the effect that the photographs were fair, correct and accurate representations of the geographical situation in 1949. Such refusal was error. A witness may verify a photograph of the scene as the correct representation of the same at the time in question, provided the witness is familiar with the scene and is competent to testify that the photograph correctly represents the scene; in such case the photograph should

be admitted in evidence. (*Adamczuk* v. *Holloway,* 338 Pa. 263, 13 A. [2d] 2.)

While ordinarily evidence that the prosecuting witness is immoral or had intercourse with another is immaterial in a statutory rape case, where evidence by a physician is given to show that she is not a virgin, evidence that the prosecuting witness had intercourse with others than the defendant is admissible for rebutting the inference against him that the defendant is responsible for her physical condition. In this case the trial court permitted a physician to testify as to his findings of the condition of the prosecuting witness, that there had been penetration and the hymen had been lacerated previous to the time of his examination. Under such circumstances the defendant should be permitted to show her intercourse with others. The court's refusal to permit testimony to this effect was error.

Reversed.

*Daniel G. Ridley* (also on the briefs) for defendant-plaintiff in error.

*Arthur S. K. Fong,* Assistant Public Prosecutor (also on the briefs), for the Territory, plaintiff-defendant in error.