STATE OF HAWAII, Plaintiff-Appellee, *v.* GLEN
RICHARD JONES, Defendant-Appellant

NO. 6321

OCTOBER 7, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ.,
RETIRED JUSTICE KOBAYASHI AND CIRCUIT
JUDGE LUM, ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY MENOR. J.

This is an appeal by the defendant who was convicted by a jury of the offense of rape in the first degree, under HRS § 707-730 (1976), and of sodomy in the first degree, under HRS § 707-733 (1976).

The complainant, an unmarried Navy petty officer, was doing her laundry at the Pearl Harbor barracks when she saw and recognized the defendant, also in the Navy, as the husband of her former roommate. She asked him if he remembered her and inquired about his wife. The defendant told her he was getting off duty shortly and offered to give her a ride to see his wife at her work station at Barber's Point. The complainant accepted the offer, and they drove to Barber's Point where the complainant visited with the defendant's wife for about forty-five minutes. Thereafter, the complainant asked to be driven back to her barracks. On the way the defendant asked her if they could stop by his apartment for his cigarettes and some money. Curious to see an apartment that was still available at a rental of $260.00 per month, she agreed. It was while they were in his apartment that he allegedly raped and sodomized her.

I.

We will consider first the defendant's assertion that the evidence on the issue of forcible compulsion failed to establish a prima facie case of rape or sodomy in the first degree.

"A male commits the offense of rape in the first degree if: . . . [h]e intentionally engages in sexual intercourse, by forcible compulsion, with a female," HRS § 707-730 (1976). and

"[a] person commits the offense of sodomy in the first degree if: . . . [h]e intentionally, by forcible compulsion, engages in deviate sexual intercourse with another person or causes another person to engage in deviate sexual intercourse," HRS § 707-733 (1976). The statute defines "forcible compulsion" to mean *"physical force that overcomes earnest resistance; or a threat, express or implied, that places a person in fear of immediate death or serious physical injury* to himself or another person, or in fear that he or another person will immediately be kidnapped." HRS § 707-700(12) (1976). (Emphasis added) The statute defines "serious physical injury" to mean "bodily injury which creates *a substantial risk of death or which causes serious, permanent disfigurement,* or protracted loss or impairment of the function of any bodily member or organ." HRS § 707-700(3) (1976). (Emphasis added) The failure of the government to produce evidence meeting these statutory requirements would be fatal to the prosecution's case.

"Earnest resistance," however, is a relative term and whether or not the statutory requirement was satisfied must be measured by the circumstances surrounding the alleged assault. Among the factors to be considered are the relative strength of the parties, the age of the female, her physical and mental condition, and the nature and degree of the force used by the assailant. *State v. Dizon,* 47 Haw. 444, 390 P.2d 759 (1964). Resistance may appear to be useless, and may eventually prove to be unavailing, but there must have been a genuine physical effort on the part of the complainant to discourage and to prevent her assailant from accomplishing his intended purpose. *Id.* And where submission without earnest resistance is alleged to have been induced by fear, such apprehension must have been of death or serious physical injury and must have been a reasonable fear as judged by the circumstances. This is not to say, however, that the woman threatened with the violation of her person is required to take unnecessary risks. All the law requires is that her fear must have been reasonable, and that it was this fear which impelled her to submit without resisting to the degree of which she was capable. Even where the resistance of a female

standing alone, or the threats of the defendant standing alone. would be insufficient to support a conviction for rape or sodomy in the first degree, the combined effect of the defendant's threats and the force he applied may suffice to sustain the conviction. *Harris v. State*, 441 S.W.2d 189 (Tex. Crim. App. 1969).

The defendant argues, nevertheless, that when these rules are applied to the facts in this case, it becomes evident that forcible compulsion had not been shown, and that the trial court erred in denying his motion for judgment of acquittal. He points out that he and the complainant were not strangers to each other; that she had gone with him willingly to his apartment; that no weapon was used or displayed or threatened to be used; that there were no tears or emotional outbursts from the complainant after the acts of intercourse; and that when she was examined at Tripler Hospital that same day, no evidence of trauma — abrasions, lacerations, bruises — was found anywhere on her person.

All of these may well be true, but when she was safely out of the apartment and beyond his physical reach and control, she immediately solicited assistance from third parties in reporting the matter to the police. More importantly, the record shows[1] that after the defendant and the complainant reached the apartment and while she was waiting for him in the living room, he unexpectedly approached from behind, encircled her neck with one arm, placed his hand firmly over her mouth, and warned her not to scream. Turning her head, the complainant saw a blank expression on the defendant's face and noticed that it was marked by purple splotches. After again telling her to be quiet, he began to drag her backwards toward the apartment bedroom, still with one arm around her neck. Meanwhile, she kept repeating, "Glen, what are you doing? Please take me home." She testified that she was terrified and fearful for her life and pleaded with him not to hurt her.

---

[1] On appeal, an appellate court is required. after conviction, to view the evidence in the light most favorable to the prosecution. Byrnes v. United States, 327 F.2d 825 (9th Cir. 1964).

At the doorway to the bedroom the defendant hugged her and tried to kiss her, but she turned her head away and began to cry. At some point he said, "Just do as I say and you won't get hurt." He finally got her to the bed, pushed her down, and lay on top of her. The complainant testified:

Q. And what happened?

A. He was trying to kiss me and I kept pleading with him. I was crying. I was getting hysterical.

He tried to kiss me and I turned my head. And I got very loud, crying, and moving my head and pleading with him. And he slapped me on the face.

Q. And then what happened?

A. After he slapped me on the face, I just laid completely still for a moment and I looked at him. And he was looking down at me. His face was expressionless.

And he was — his face was still discolored. And then I tried to get up. I kicked. I tried to put my arms up from under his body and tried to move out from under him. And he pressed me very hard to the bed. And I couldn't move.

The defendant then ordered her to remove her clothes but she refused. He was by then straddling her and he warned her: "Take your clothes off or I'm going to hurt you." When she still refused, he forcefully pulled off her jeans and underpants and then ordered her to remove her blouse. She refused but when he pointed his finger at her and said, "Do as I say and you won't get hurt," she finally decided to comply. After compelling her to try on some of his wife's clothing, and then ordering her to remove them, he undressed himself, straddled her, and with both hands pulled her head towards him. He ordered her to engage in fellatio and she complied. Thereafter he pinned her down with his body and effected penetration. When asked why she consented to the act of sodomy, she testified:

I felt forced to do it. I didn't want to resist him. I didn't want to make him mad. I didn't want it to lead to violence. I was afraid that he would hurt me. He was — he said he would hurt me if I didn't do like he said.

On the foregoing facts, we find forcible compulsion to have been amply established. The record shows that the

 

defendant was much stronger than the complainant was. While the defendant's threats did not indicate to what extent he would "hurt" her if she failed to comply, he had already demonstrated his capacity to inflict serious physical injury when he encircled her neck with his arm and dragged her unwillingly to the bedroom. The defendant's demonstrated potential to harm the complainant coupled with his threats to hurt her gave grounds for reasonable fear of serious physical injury, thereby obviating the necessity for further overt resistance on her part. This is consistent with the rule in *Harris, supra,* that the defendant's threats in combination with the force he applied may sustain a conviction for rape and sodomy where the complainant's resistance standing alone or defendant's threats standing alone might be insufficient.

## II.

The defendant has also challenged his conviction on the ground that his rights under the Confrontation Clause and to due process have been violated. This challenge is without merit.

Pursuant to HRS § 707-742 (1976),[2] the defendant had filed a motion seeking leave of the trial court to cross-examine the complainant regarding her past sexual experiences. The statute required the filing of a written motion "stating that the defense ha[d] an offer of proof of the relevancy of evidence of the sexual conduct of the complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness." *Id.* It also required an affidavit to accompany the motion "in which the offer of proof shall be stated." *Id.* If from the motion and affidavit the trial court found that the offer of proof was sufficient, "the court shall order a hearing out of the presence of the jury, if any, and at such hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant." *Id.*

---

[2] Rule 412 of the Hawaii Rules of Evidence, as promulgated by Act 164, 1980 Hawaii Sess. Laws, replaces HRS § 707-742 effective January 1, 1981.

Where the court was of the opinion that the evidence offered by the defendant *was relevant and was not inadmissible for any reason*, "the court may make an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted." *Id.*

The defendant's motion alleged only that the sexual conduct of the complainant was "relevant to attacking the credibility of the complaining witness." The affidavit, however, alleged that it was also relevant to the issue of consent or absence of forcible compulsion. The defendant's only offer of proof as to past sexual conduct was that "[t]he complaining witness had consensual sexual intercourse with another person the immediate Saturday prior to January 26, 1976, the date of the alleged incident." January 26 of that year fell on a Monday. The trial court heard the motion and at the conclusion of the hearing, it held:

> The court will at this time rule on the motion made offering to prove certain prior sexual conduct on [*sic*] the complaining witness. The court's ruling is that the motion as offered will be denied. The court finds that the offer of proof is no more than slight to be of sufficient relevancy in attacking the credibility of this witness.
>
> However, based on what the witness has testified so far on her direct examination, the court will permit this one question to be asked of the witness in this area.
>
> The question is: Have you, prior to the time of the alleged incident, had [*sic*] engaged in sexual intercourse with anyone else? That one general question will be asked. Of course, if she denies it, then that will do. No further questions. But if she answers in the affirmative, that will be the only question allowed.

The defendant's right of cross-examination, which is the essence of the Confrontation Clause of the United States Constitution, may not be unduly restricted, *Davis v. Alaska*, 415 U.S. 308 (1974), but it has never been held that this right is absolutely without restriction. A witness may be cross-examined, and testimony elicited, upon matters bearing upon his credibility. But the testimonial evidence sought to be adduced must fairly bear upon his capacity for truth and

veracity. Thus, in *Asato v. Furtado*, 52 Haw. 284, 474 P.2d 288 (1970), proof of the witness' prior conviction for careless driving was ruled inadmissible because it was irrelevant to the issue of credibility. "In every instance where a witness is sought to be impeached, the only issue that arises is whether the witness is telling the truth. It is character and reputation for truth and veracity, not any other character trait, that is in issue. Therefore, any evidence adduced on this issue, in order to be relevant at all, must go to the issue of truth and veracity." *Id.* at 292, 474 P.2d at 294. In the present case, no rational connection between the complainant's alleged past sexual experience and her capacity for truth and veracity has been established, and we therefore hold that such evidence was inadmissible on the issue of her general credibility. *See, generally, Annotation*, 94 A.L.R.3d 257, 276. Such evidence could not, in the circumstances of this case, have had a possible bearing upon her capacity to tell the truth. To hold otherwise would be to lend validity to the spurious assumption that a woman who has had some past sexual experience is generally less believable in cases involving sexual crimes than one who has not had that experience.

However, this does not end our inquiry, for the defendant has also raised the question of whether such evidence, as bearing upon the specific issue of consent rather than on the general credibility of the complainant, should have been allowed. *Davis v. Alaska, supra*, would seem to give some meaning to the defendant's argument, at least where a distinction is sought to be drawn between the admissibility of evidence offered for the purpose of impeaching the general credibility of the witness and the same evidence advanced to sustain or disprove a specific issue in controversy. *Id.* 415 U.S. at 316. Here, the defendant claims that he was entitled to cross-examine the complaining witness as to specific instances of her past sexual conduct with persons other than the defendant to show consent on the occasion of the alleged rape.

This court has never directly addressed the question of whether evidence of specific instances of past sexual conduct with others than the defendant is admissible to show consent

to an alleged rape. This question goes beyond the purview of HRS § 707-742, which provides for determination of the relevance of prior sexual conduct to credibility, not consent. A majority of jurisdictions would exclude evidence of specific acts of prior sexual conduct on the issue of consent. *Pope v. Superior Court,* 113 Ariz. 22, 29, 545 P.2d 946, 953 (1976); *McLean v. United States,* 377 A.2d 74, 78, (D.C. 1977); *People v. Whitfield,* 58 Mich. App. 585, 591, 228 N.W.2d 475, 478 (1975); *State v. Kain,* 330 S.W. 842, 846 (Mo. 1960); *Shaphard v. State,* 437 P.2d 565, 600 (Okla. 1967), *cert. denied* 393 U.S. 826; *State v. Howard,* 544 P.2d 466, 469 (Utah 1975); *Wynne v. Commonwealth,* 216 Va. 355, 357, 218 S.E.2d 445, 446 (1975); *State v. Geer,* 13 Wash. App. 71, 73, 533 P.2d 389, 391 (1975). The rationale for this rule is that the admission of such evidence of specific acts would inject collateral issues into the case which would divert the jury's attention from the real issue, which is the guilt or innocence of the accused. *Wynne v. Commonwealth, supra.* Courts have reasoned that use of such evidence could easily discourage prosecution for rape; such evidence is distracting and may so prejudice the jury that it would acquit even in the face of overwhelming evidence of guilt. *Pope v. Superior Court, supra; McLean v. United States, supra; State v. Geer, supra.*

Traditionally courts have made a distinction between evidence of specific acts and reputation evidence of prior sexual conduct, inclining to allow introduction of the latter. The modern and well-reasoned approach is to exclude reputation evidence of prior sexual conduct for reasons similar to those which justify exclusion of evidence of specific acts. *Pope v. Superior Court, supra; McLean v. United States, supra; State v. Herrera,* 92 N.M. 7, 582 P.2d 384 (Ct. App. 1978).

> The reputation of a woman for unchastity raises unnecessary collateral issues which are nearly impossible to rebut, it diverts the jury's attention from the principal issues at trial and it results in prejudice to the complaining witness which greatly outweighs its extremely limited probative value. *McLean, supra* at 79.

We note that Rule 412 of the Hawaii Rules of Evidence, which becomes effective on January 1, 1981, is generally

consistent with the modern trend in the law to disallow reputation and specific evidence of prior sexual conduct with persons other than the accused as proof that a complainant consented to sexual intercourse with the accused. Rule 412 renders inadmissible evidence of the complainant's past sexual behavior with persons *other than the accused* on the specific issue of consent. The rule does allow, however, for its admission where it is offered to refute physical or scientific evidence such as the source of semen or injury, or where it is constitutionally required to be admitted. At what point the admission of reputation or specific evidence of prior sexual conduct may be constitutionally required, *cf. Davis v. Alaska, supra,* we need not here decide, for we are satisfied that the evidence offered in this case was clearly irrelevant and not probative of the issue of consent. Proof that the complainant consented to intercourse with another man two days before the alleged rape and sodomy is hardly evidence that she consented to intercourse with the defendant.[3]

### III.

Finally, while conceding that the law in this jurisdiction does not require corroboration of a complaining witness in a rape prosecution, *see State v. Dizon, supra; Territory v. Slater,* 30 Haw. 308 (1928), the defendant nevertheless argues that a cautionary instruction should have been given to the jury. He, therefore, contends that the refusal of the trial court to give the following instruction was reversible error:

Testimony which you believe given by one witness is sufficient for the proof of any fact. However, before find-

---

[3] The defendant also complains that he was unable to offer more about the past sexual conduct of the complainant because the witness refused to be interviewed before trial. While he recognizes that an accused is not entitled as of right to the extrajudicial interview of a prospective witness who refuses to cooperate, Byrnes v. United States, 327 F.2d 825 (9th Cir. 1964), he claims that the trial court should have allowed him to examine the complainant on the subject at the preliminary hearing which was conducted outside of the presence of the jury. This, he maintains, would have enabled him to ascertain the true nature and extent of her past sexual history. The trial court in turn, would have been able to make a more enlightened determination of its admissibility. We agree that the trial court might have granted his request, but in the circumstances of this case it was not required to do so.

ing any fact to be proved solely by the testimony of such a single witness, you should carefully review all of the testimony upon which proof of such fact depends.

The foregoing instruction was taken verbatim from *People v. Rincon-Pineda*, 14 Cal. 3d 864, 885, 123 Cal. Rptr. 119, 133, 538 P.2d 247, 261 (1975), which the court in that case decreed should be given in all criminal trials in the California courts where no corroborating evidence is required and conflicting testimony has been presented. While we agree that on the facts of this case the trial court might have given the requested instruction, it was not required to do so. *Cf. State v. Settle*, 111 Ariz. 394, 531 P.2d 151 (1975). Moreover, we think that the instruction it gave on witness credibility was sufficient:

> In evaluating a witness, you may consider the appearance and demeanor of a witness on the witness stand, his manner of testifying, his degree of intelligence, his apparent candor or frankness or lack thereof, his interest, if any, in the result of the case, his temper, feeling or bias, if any has been shown, his character as shown by the evidence, his means and opportunity of acquiring information, *the probability or improbability of his testimony*, and all other circumstances surrounding the witness and bearing upon his credibility. (Emphasis added)

Furthermore, there was some corroboration in this case by virtue of complainant's prompt report. *People v. Gomez*, 184 Colo. 319, 519 P.2d 1191 (1974); *Padilla v. People*, 156 Colo. 186, 397 P.2d 741 (1964); *Price v. State*, 233 Ga. 332, 211 S.E.2d 290 (1974); *State v. Dizon, supra*. As soon as she was beyond the physical reach and control of the defendant, the complainant reported the rape to disinterested bystanders whose assistance she solicited in reporting the matter to the police. *Compare, Territory v. Hays*, 43 Haw. 58 (1958). That she took this prompt action was established by independent evidence. When the police arrived they immediately proceeded with the investigation, and she cooperated with them to the fullest extent.

Affirmed.

*Edmund Yee,* Special Deputy Public Defender for defendant-appellant.

*Glenn M. Miyajima,* Deputy Prosecuting Attorney for plaintiff-appellee.