STATE OF HAWAII, Plaintiff-Appellee, *v.* ERIC ABELLIRA ALFONSO, Defendant-Appellant, and EUGENE CHARMON MARGIOTTA, Defendant

NO. 7843

(CRIMINAL NO. 53649)

JULY 14, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
AND RETIRED JUSTICES OGATA AND MENOR,
ASSIGNED TEMPORARILY

OPINION OF THE COURT BY LUM, J.

Defendant-appellant Eric Abellira Alfonso ("appellant") and co-defendant Eugene Charmon Margiotta were tried jointly and each convicted by a jury of rape in the first degree and of sodomy in the first degree pursuant to HRS §§ 707-730(1)(a)(i) (1976)[1] and 707-733(1)(a)(i) (1976),[2] respectively, based on the same criminal episode. Upon consideration of the issues raised which merit discussion, we affirm appellant's conviction.

## I.

We shall first consider whether the trial judge's remarks near the close of the prosecutor's case and his permitting the victim to testify a second time denied appellant a fair trial. These claims of error stemmed from the proceedings that followed immediately after the victim had been examined by all parties and excused from the stand. The prosecutor, desirous of assisting the jury in identifying the

---

[1] The portion of HRS § 707-730 under which the co-defendants were convicted provides as follows:
*Rape in the first degree.* (1) A male commits the offense of rape in the first degree if:
(a) He intentionally engages in sexual intercourse, by forcible compulsion, with a female and:
(i) The female is not, upon the occasion, his voluntary social companion who had within the previous twelve months permitted him sexual intercourse; . . . .

[2] HRS § 707-733(1)(a)(i) (1976) recites as follows:
*Sodomy in the first degree.* (1) A person commits the offense of sodomy in the first degree if:
(a) He intentionally, by forcible compulsion, engages in deviate sexual intercourse with another person or causes another person to engage in deviate sexual intercourse, and:
(i) The other person was not, upon the occasion, his voluntary social companion who had within the previous twelve months permitted him sexual contact of the kind involved; . . . .

scene of the alleged crimes through photographs already received into evidence, had planned to recall her to testify as to the proximity of the different views depicted in the pictures to each other. It appeared to appellant's counsel through the prosecutor's own statement that this testimony would conclude the government's case.[3] A discussion over the necessity of linking the scenes was held out of the jury's hearing, and concluded with the following inter-change:

> THE COURT: What is your pleasure, Mr. Prosecutor?
>
> MR. KANESHIRO: Well, in that case, Your Honor, the State would have to call the witness because this area located in State's Exhibit 6 is also depicted by State's Exhibit 5. And we have to show the link just to aid the jury in understanding the general scene of the crime.
>
> THE COURT: All right. You want a recess?
>
> MR. KANESHIRO: Okay, Your Honor.
>
> THE COURT: *In case the Prosecution is about to rest its case, my only caution to both sides is, review very thoroughly what you have proven so far.* All right, let's take a recess.

(emphasis added).

Before the jury was excused for the break, however, counsel for Margiotta stipulated to the connection between the scenes shown in the photographs. The prosecutor nonetheless indicated that the State had not concluded its case, and the court recessed. When the parties returned, but again in the absence of the jury, the prosecutor requested that he be permitted to return the victim to the stand "because the State, after reviewing the notes, feel [sic] that it missed one element that [it] would like to bring forth through the witness. There's an indication by the witness that she recalls testimony that she did not give on direct examination that she would like to give." He disclosed that the victim, during recess, had mentioned to a crisis center worker that she had failed to testify that she did not resist the

---

[3] Just after the victim was excused from the stand, the prosecutor uttered the following: "Your Honor, before calling our last witness, the State would make a motion to move into evidence what has been marked as State's Exhibits 6, 7, 8, 9, and 10 for Identification." This last witness was to have been the police officer who had taken the photographs, but because of his unavailability, the prosecutor proposed recalling the victim.

defendants because she was attempting to hide her friend's knife from them, and that she had also failed to mention certain remarks that the defendants had made to her during the episode. The judge recalled the victim for the limited purpose of testifying to these matters, but only after both she and the crisis center employee had been examined by all parties in the jury's absence to determine the substance of the conversation between them.

Appellant asserts that the court improperly tipped the prosecutor, who was about to rest his case, that he had not met his burden of proof, for it was only after the judge's cautionary remark that the prosecutor recalled the victim to testify on matters which substantially prejudiced the defendants.

It is of course a well-established and elementary principle of our system of justice that a judge presiding over a trial has the obligation to maintain impartiality and fairness in the proceedings before him. *Glasser v. United States,* 315 U.S. 60, 82 (1942); *State v. Pokini,* 55 Haw. 640, 645, 526 P.2d 94, 101 (1974). And thus while judges are entrusted with wide latitude in the making of comments during the course of a trial, *Taylor v. Carborundum Co.,* 107 Ill. App.2d 12, 28, 246 N.E.2d 898, 906 (1969), any remarks must be calculated with extreme care so as not to reflect, *inter alia,* judicial bias toward either party or opinion as to the weight of the evidence or the merits of the case. *Kanoy v. Hinshaw,* 273 N.C. 418, 426, 160 S.E.2d 296, 302 (1968). But before this appellate court may find that a judge, through his statements, destroyed a defendant's opportunity for a fair trial, the defendant must demonstrate that those comments prejudiced the jury against him, *Taylor v. Carborundum Co., supra; State v. Griffin,* 4 Wash. App. 947, 484 P.2d 448 (1971), or otherwise unduly and adversely affected the outcome of the trial. *Babcock v. Chesapeake & Ohio Railway Co.,* 83 Ill. App.2d 919, 923, 404 N.E.2d 265, 270 (1979); *Commonwealth v. Ryder,* 467 Pa. 484, 487, 359 A.2d 379, 381 (1976). For the defendant's guarantee of a fair trial does not shield him from all erroneous, unwise or irrelevant remarks made during the course of the proceedings, but only from those which may reasonably be said to have prejudiced him. *Id.*

The assertion that the judge's warning unduly and unfairly prejudiced the outcome of the trial has not been established by appellant and remains a matter of purest speculation. Even assuming that the remark, neutrally phrased, constituted a hint to the

prosecutor that he had not proven his case, there exists no indication whatsoever that the prosecutor's subsequent actions would have been any different had it not been uttered. That the new information was volunteered by the victim and not elicited by the prosecutor strongly suggests otherwise. More importantly, however, the judge's statement was made in a bench conference out of the jury's hearing, and thus could not have affected the minds of the jurors at all. We cannot conclude from these circumstances that the judge's word of caution denied appellant a fair trial.

Appellant's second argument that the judge abused his discretion by erroneously allowing the victim to retestify without limiting the scope of her examination is wholly unsupported by the record and the law. The latitude permitted counsel in offering testimony and the order of that testimony rests completely within the discretion of the trial court, and an abuse of that discretion must be established before reversal of a conviction based on the testimony or a new trial may be warranted. *Territory v. Alcosiba*, 36 Haw. 231, 236 (1942); *Territory v. Kimbrel*, 31 Haw. 81, 89 (1929); *Mist v. Kewalo*, 13 Haw. 302, 303 (1901); *see* Haw. R. Evid. 611 & Commentary; *cf.* *Filipino Federation of America, Inc. v. Cubico*, 46 Haw. 353, 372, 380 P.2d 488, 499 (1963); *Territory v. Kimbrel, supra* (reopening case for further evidence before submission to jury is within trial judge's discretion).

The prosecutor herein had not rested his case when the victim retook the stand to testify. Before the court allowed her to do so, both she and the crisis center worker were examined in the jury's absence for the purpose of determining the manner in which the new testimony had been discovered and the substance of that testimony. The judge thereafter limited the scope of the direct examination to matters which had not been covered during the victim's previous appearance on the stand. The defendants were given full opportunity to cross-examine her. We find no abuse of discretion by the trial court.

II.

Appellant moved for judgment of acquittal at the close of the prosecution's evidentiary presentation, arguing that the government had failed to establish the element of forcible compulsion

beyond a reasonable doubt. Viewing the testimony in a light most favorable to the prosecution, the court concluded that there existed sufficient evidence from which a jury could convict the co-defendants of the crimes charged, and accordingly denied the motion. Appellant now contends that the court's action constituted prejudicial error, warranting reversal of his conviction.

In reviewing a motion for judgment of acquittal, the trial court's duty rests in determining whether, "upon the evidence viewed in a light most favorable to the government, and giving full play to the right of the jury to determine credibility, weigh the evidence, and draw therefrom justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *State v. Brighter,* 62 Haw. 25, 31, 608 P.2d 855, 859 (1980); *State v. Murphy,* 59 Haw. 1, 19, 575 P.2d 448, 460 (1978); *State v. Yabusaki,* 58 Haw. 404, 411, 570 P.2d 844, 848 (1977). Of course the judge in this case must have been able to conclude that a jury could find forcible compulsion beyond a reasonable doubt, for "[i]t is well established, as a precept of constitutional as well as statutory law, that an accused in a criminal case can only be convicted upon proof by the prosecution of every element of the crime charged beyond a reasonable doubt." *State v. Lima,* 64 Haw. ____, ____, 643 P.2d 536, 539 (1982).

"Forcible compulsion," that element common to both rape and sodomy which characterizes the manner in which the criminal act is committed, is defined in HRS § 707-700(12) (1976) as "physical force that overcomes earnest resistance; or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person, or in fear that he or another person will immediately be kidnapped." HRS § 707-700(3) (1976) defines "serious physical injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

Appellant maintains that neither earnest resistance nor fear from threats was established by the victim's testimony. He claims that her sole response to any putative exertion of force by him was the exclamation "please don't." According to him, the record fails to demonstrate that the victim attempted to flee, cry out, or otherwise interfere with appellant's actions. With respect to any express or implied threats, appellant notes that the victim testified merely to

being "scared" and at most to an apprehension of "being hurt," neither of which indicates a fear of "serious bodily injury." By her own admission, the victim confirmed that she did not offer physical resistance when appellant first sat on her legs, pinned down her arms, pulled off her jeans and proceeded to have sexual intercourse with her. But she asserted as the reason for her apparent submission that she was fearful of being injured by the co-defendants, which fear was heightened by her awareness that her companion's knife was lodged in the sand near her legs and could have been used against her by either assailant.

As this court recently recognized in *State v. Jones*, 62 Haw. 572, 617 P.2d 1214 (1980), "where submission without earnest resistance is alleged to have been induced by fear, such apprehension must have been of death or serious physical injury and must have been reasonable as judged by the circumstances." *Id.* at 574, 617 P.2d at 1217. Like earnest resistance, then, this fear of death or serious injury is an inherently relative concept, *Dumer v. State*, 64 Wis.2d 590, 609-10, 219 N.W.2d 592, 603 (1974), and the aggressor's intimidations of a victim need not have been made in any particular manner to enable a jury to believe that the victim's will to resist had been overcome by fear. The definitional penal statute itself, by accounting for the reality that an "implicit" threat may instill the same apprehension of danger in a victim as an "express" threat, anticipated that a determination of the reasonableness of the victim's fear would be subjective and based upon the totality of circumstances surrounding the assault. *See* HRS § 707-700(12) (1976). And where the defendant's threats standing alone would not suffice to support a rape or sodomy conviction, the facts may be such that the "combined effect of the defendant's threats and the force he applied may . . . ." *State v. Jones, supra* at 575, 617 P.2d at 1217.

Applying these rules to the facts as viewed most favorably to the government, we are compelled to agree with the trial court that a reasonable mind could have found forcible compulsion to have been shown beyond a reasonable doubt. The incident occurred in the darkness of the early morning hours on a secluded portion of Diamond Head beach. The victim was ultimately confronted alone by two men, both of whom had been drinking heavily before reaching the park. She witnessed her companion being assaulted, shoved to the ground, and chased off the beach by defendant Margiotta,

and found herself alone with appellant. Her friend never returned to the beach. When appellant climbed onto her legs and pinned down her arms, the victim begged "please don't" and asked to be released. Appellant refused, threatening to hurt her if she didn't shut up. Following intercourse, appellant again ordered the victim to shut up. When defendant Margiotta reappeared, he told her that her companion "was a no good haole," that she "ought to have someone like him," and that "he could beat up anybody." The co-defendants engaged in sexual intercourse and fellatio simultaneously, switching places on top of her several times before the police arrived. When the officers reached the scene, they found the victim very upset and crying heavily. During the entire incident, the victim was afraid of being injured by the two men, and was also fearful of the possibility that they might discover her friend's knife nearby and use it against her.[4] The knife's blade was approximately four to five inches long, and the victim, conscious that the handle was protruding from the sand, attempted during the entire episode to conceal it with her legs.

---

[4] The victim testified as follows on direct examination:

Q. Now, when the guy pulled off your jeans, did you offer any physical resistance at the time?
A. No, I didn't. I was scared.
Q. What were you afraid of?
A. Them and the fact that there was a knife in there, too.

. . . .

Q. Now why were you afraid of the guy in the shorts and the guy in the jeans?
A. I was afraid that he was going to hurt me.

. . . .

Q. Okay. How did you resist?
A. I was trying to cover up the knife.
Q. Okay. Now, how were you trying to cover up the knife?
A. By not letting them see it.
Q. Why didn't you want them to see it?
A. Because I was afraid that if they did find it, they'd use it.

. . . .

Q. Okay. So how were you trying to cover it up?
A. With my legs.
Q. When were you doing this?
A. When he was taking off my jeans and during the whole thing.

Although the record is not replete with attestations of fear of specific injury, we believe that appellant's explicit threat of harm, together with Margiotta's show of brute force against the victim's companion and boast of strength manifesting a power to carry out the threat, when viewed in the context of the circumstances, enabled a jury to find that the victim's fear of serious injury was a reasonable one. *See State v. Jones, supra* at 577, 617 P.2d at 1218. Giving due regard to the jury's function of assessing the credibility of the witnesses and of weighing the evidence, we cannot conclude that the trial court was in error in believing that a jury could find forcible compulsion to have been shown beyond a reasonable doubt, which it eventually did.

Finding appellant's remaining contention to lack merit, we sustain his conviction.

Affirmed.

*William H. Brady (Brady & Brady* of counsel) on the briefs for defendant-appellant.

*Wevley H. Shea,* Deputy Prosecuting Attorney, on the brief for plaintiff-appellee.